The Territory vs. Chartrand.

AFFIRMED.

THE TERRITORY V. CHARTRAND.

*1.* *HOUSE OF ILL-FAME:* REPUTATION: EVIDENCE OF. Under an indictment charging defendant with keeping a bawdy house or house of ill-fame, evidence tending to show the general reputation or character of the house kept by defendant is admissible.

*2.* ———: ———: ———. The prosecution must first show that the defendant kept the house in question, and may then show its general character or reputation, and that of its frequenters and of the defendant; and if this satisfies the jury that the house was of the kind described in the statute, and indictment, they may so find, without proof of particular acts of prostitution or lewdness.

*3.* ———: INDICTMENT: HOW SUSTAINED. The charge may be sustained if the evidence satisfies the jury beyond all reasonable doubt that the defendant kept the house and then that it was resorted to by people of both sexes, who were reputed to be of bad and lascivious character, and that it was generally understood and reputed to be such house of ill-fame.

*4.* *INSTRUCTIONS:* HOW CONSIDERED. An appellate court in determining the question of error in giving or refusing instructions, examine and pass upon the instructions as a whole and not in fragmentary parts, and from such examination determine whether the jury may have been misled, or the defendant prejudiced.

*Writ of Error to the Yankton County District Court.*

THE defendant was indicted for keeping a house of ill-fame. On the trial the prosecution having shown by a witness that girls were seen in defendant's house, who were reputed to be prostitutes, and also that the defendant was there acting as keeper, tending bar, etc., then offered to prove what the general reputation of the house was, to which offer counsel for defendant objected on the ground that the evidence sought

was incompetent, which objection was overruled by the court, and defendant took his exception. The Court gave to the jury the following instructions:

1. " Our statute declares that 'every person who keeps any bawdy house, house of ill-fame, of assignation, or of prostitution, or any other house or place for persons to visit for unlawful sexual intercourse, or for any other lewd, obscene or indecent purpose, is guilty of a misdemeanor.'

2. " The prosecution, to make out its case, must, in the first place, show that the accused party is the keeper of the house alleged to be such house of ill-fame as charged in the indictment.

3. " The question first is, did or did not the defendant keep the house? Or did some other person keep it?

4. " The prosecution is not required to show, by the evidence, any particular acts of lewdness, or prostitution in the house. This is a plain proposition.

5. " The charge may be sustained if the evidence satisfies the jury beyond all reasonable doubt, that the defendant kept the house, and then that it was resorted to by people of both sexes *who were reputed* to be of lewd and lascivious character, and that it was generally reputed to be such house of ill-fame.

6. " If such be shown, as above stated, you may find therefrom that it was such house of ill-fame.

7. " Was it, or was it not, *generally reputed* to have been such house of ill-fame? What was the general reputation of the females in the house? This is one pertinent question among the others.

8. " Again, what was the general reputation of the house? What did the public generally say about it, if anything?

9. "A house of ill-fame is a house of bad reputation. I suppose you all well know the meaning of the words, 'good reputation,' or the other words, 'bad reputation.'

10. "I repeat, the law does not oblige the prosecution to show particular acts of prostitution, or of lewdness, in the house. If it were thus essential for the prosecution to show such acts, how in the majority of cases could such evidence be obtained."

The jury returned a verdict of "guilty of keeping a house of ill-fame, as charged in the indictment," whereupon the defendant entered a motion for a new trial, setting forth the following grounds:

"1.  Because the verdict of the jury herein is not supported by the evidence.

"2.  Because the Court erred in charging the jury as follows:"  [Here were set out the instructions of the Court, numbered 5 to 9, inclusive.]

This motion was overruled, and defendant sentenced to imprisonment in the county jail for the period of nine months, and to pay a fine of two hundred dollars, and the cause was removed to this court for review on writ of error.

*S. L. Spink*, for defendant.

Evidence ought not to have been admitted over the objection of the defendant to show the general reputation of the house kept by said defendant.  (Bishop on Crim. Pro., Vol. 2, § 114; 4 Cranch, C. C., 342, 338, and 372; Brightly's Fed'l. Dig., page 231, par. 849; 14 U. S. Dig., page 275, par. 251; 17 Miss., 247.)

But if evidence of the reputation of the house was legal and proper, still the Court erred in charging the jury that "the charge may be sustained if the evidence satisfies the jury beyond all reasonable doubt that the defendant kept the house, and then, that it was resorted to by people of both sexes, who were reported to be of lewd and lascivious character, and that it was generally reputed to be such house of ill-fame.  If such be shown as above stated, you may find therefrom that it was such house of ill fame."

The questions for the jury to determine, were: 1st, was the defendant the keeper of the house in question; 2d, was the house so kept by the defendant a house of ill-fame, resorted to for purposes of prostitution and lewdness; and it was upon these points that the jury should have been satisfied beyond a reasonable doubt, before returning a verdict of conviction, and not as to the reputation of either the house or its inmates.

The charge was well calculated to mislead the jury into the belief that after they had found that the defendant was the

keeper of the house, then their only other inquiry should be as to the reputation of the people who resorted to it, and the reputation of the house itself, and if they found them bad, they should convict, especially as the Court, nowhere in his charge, told the jury that they must be satisfied beyond a reasonable doubt that the house was actually a house of ill-fame or bawdy-house, but all the time directed their attention to the question of reputation.     (*State v. Burnell*, 29 Wis., 435; *State v. Hand*, 7 Iowa, 411.)

The indictment having alleged that the house in question was resorted to for purposes of prostitution and lewdness, it was incumbent upon the prosecution to prove this fact before the jury were justified in convicting.     (Brightly's Fed. Dig., page 212, par. 320; 3 Day, 283.)

The Court erred in charging the jury that "a house of ill-" fame is a house of bad reputation."

The defendant in this case was charged with being the keeper of a house of ill-fame, and if the definition of the words given by the Court is correct, then if the jury found the defendant to be the keeper, and that the reputation of the house was bad, they were bound to convict.     But such is not the correct definition of the words, as used in the statute.     A house of "ill-fame" means a bawdy-house, not a house that has the reputation of being a bawdy-house.

The definition of the words, "house of ill-fame", taken in connection with the balance of the charge, necessarily led the jury to the conclusion that if they found that the defendant was the keeper, and that the reputation of the house was bad, they were bound to convict, which was manifest error.   (*State v. Burnell*, 29 Wis., 435; *State v. Hand*, 7 Iowa, 411; 2 Archibald Cr. Law, 1007.)

*Phil. K. Faulk*, District Attorney, for the Territory.

Cited and relied on the following authorities: 29 Wis., 435; 7 Iowa, 411; 1 Bishop's Crim. Law, § 1088; 2 Parker's Crim. R., 37.

BARNES, J.—This case is before the court for review, a writ of error having been sued out by defendant, who stands convicted in the Second District court for Yankton County of keeping a bawdy house, or house of ill-fame; to remove the case to this court.

The indictment charges the defendant with keeping a house of ill-fame, resorted to and visited by divers persons of both sexes, for purposes of unlawful sexual intercourse, lewdness, etc. (See § 371, page 781, Revised Code.)

The first error assigned is this: that the Court erred in admitting evidence to show the general reputation or character of the house kept by defendant.

In disposing of this question, it is understood as the fact appears, that the defendant was the proprietor or keeper of the house in question. That fact being established, both upon principle and authority, we think the testimony competent. Acts of adultery, acts of lewdness, acts of prostitution, are not acts to which the perpetrators give publicity or notoriety. Shameless and degraded indeed must this class of criminals be, who will not by all the means within their power conceal and hide their shame. Nor is it a crime which ordinarily will be attended with such circumstances as is calculated to lead to exposure and detection.

No immediate death or fatal shot will invite public attention to the criminals. From the necessity of the case, therefore, we are unanimously of the opinion that this testimony was properly received.

In *State v. Burrell*, 29 Wis., 435, the Court say: Prosecution must first show that the defendant kept the house in question, and may then show its general character or reputation, and that of its frequenters and of the defendant; and if this satisfies the jury that the house was of the kind described in the statute and indictment they may so find without proof of particular acts of prostitution or lewdness. The court below appears to have been governed (and we think properly) by this decision.

The second point will be more clearly understood by here inserting the following instructions: "The charge may be

sustained if the evidence satisfies the jury beyond all reasonable doubt, that the defendant kept the house, and then that it was resorted to by people of both sexes, who were reputed to be of bad and lascivious character, and that it was generally understood and reputed to be such house of ill-fame."

The point here made by defendant's counsel is this:—"that the second issue upon which the jury was to pass was this: was the house so kept by the defendant a house of ill-fame, resorted to for purposes of prostitution and lewdness?"

This point, as I understand it, (although not very plainly stated), is this:—that the mere fact that the defendant was the keeper of a house of ill-fame, of bad repute, of bad character, is not *per se*, or of itself a crime—a misdemeanor. But that in addition to the fact that the house is of ill-fame, it must further appear that such house of ill-fame was kept as a place for persons to visit for unlawful sexual intercourse or prostitution. The fact that the defendant's house was a house of ill-fame must be charged in the indictment (as it in fact is), and that the proof must sustain that charge beyond a reasonable doubt. That the fact that defendant's house of ill-fame was so kept for persons to visit for unlawful sexual intercourse or prostitution, was a necessary averment in the indictment, and must be established by evidence beyond a reasonable doubt. And defendant's counsel insists that these issues, the two last, were not with appropriate instructions by the Court, submitted to the jury, but that the instructions upon these issues were erroneous.

It is proper to observe here that we are not examining the record in this case for the purpose of ascertaining whether other more full and perfect instructions might not have been submitted to the jury, had the defendant's counsel at the proper time asked for such other or more definite instructions; we will only examine such questions as are presented by the bill of exceptions, and have been passed upon in the court below.

It is conceded that the instruction was proper so far as it submits to the jury the proof necessary to show proprietor-

ship of the house. But the words claimed as erroneous are the following: "And then that it was resorted to by people of both sexes, who were reputed to be of bad and lascivious character, and that it was generally reputed to be such house of ill-fame." Now observe what follows:

"If such be shown as above stated, you may find therefrom that it was such house of ill-fame." In other words and fairly interpreted, the Court say: Applying the rule as to reasonable doubt as above given, then if you find that the defendant's house was resorted to by persons of both sexes, who were reputed to be of bad and lascivious character; and that it was generally reputed to be such house of ill-fame; then from such evidence, being governed by the rules given by the Court, you may so find—that is to say, you may from that evidence find the house to be a house of ill-fame, for persons of both sexes to visit for unlawful sexual intercourse and prostitution, a house of ill-fame of the character charged in the indictment.

I am unable to discover any error in the instructions given on these points. It is distinctly saying to the jury, that the prosecution may prove the character of the house by proof of the general reputation of the persons visiting it, keeping it, and of the house itself.

Had defendant's counsel wished more definite or specific instructions upon the question of reasonable doubt, as applied to particular issues, he should have so requested at the proper time. Then if refused and excepted to, such refusal would have been before this court for review.

The only remaining question presented for our consideration, and forcibly urged upon the argument, is to the following language or part of the instruction: "A house of ill-fame is a house of bad reputation. I suppose you all well know the meanings of the words *good reputation*, and of the other words *bad reputation*."

The skill and aptitude of defendant's counsel upon the argument in disintegrating and separating the different parts of the instructions, impressed me strongly that here was a fatal error.

Certainly if the jury were by the Court led to believe that all that was necessary to establish the defendant's guilt, was evidence that the defendant was the keeper of the house in question, and that it was a house of bad reputation in contradistinction from a house of good reputation, it would be error.

The question for the jury was not, is the house in question kept by defendant a house of bad reputation, or a house of good reputation, but was it a house of bad reputation in the sense in which it is charged in the indictment:—a house of ill fame, resorted to and visited for the purposes of prostitution?

It should be observed here that in determining the question of error in giving or refusing instructions, we must examine and pass upon the instructions as a whole and not in fragmentary parts, and from such examination determine whether the jury may have been misled, or the defendant may have been prejudiced. Applying this test, we are unable to discover that the jury could have been misled by the instructions given, to the prejudice of the defendant.

The attention of the jury is first called to the charge as contained in the indictment, which was read to them. Next they were told that every person who keeps any bawdy house, house of ill-fame, of assignation, or of prostitution, or any other house or place for persons to visit for unlawful sexual intercourse, etc., is guilty of misdemeanor. Here, then, the charge against the defendant is distinctly stated by the Court to the jury.

Next, they are plainly told what the prosecution must show to make its case, and the character and class of testimony upon which they may find the house kept by the defendant, to be such house of ill-fame.

Now, what are we to understand by *such* house of ill-fame? Manifestly, a house of the class charged in the indictment read to the jury. A house of the character and reputation, the Court has just stated to the jury, the keeping of which was a misdemeanor.

The Court then propounds the question: "was it, or was it not generally reputed to have been such house of ill-fame?"

The word *such* is here used, referring to the kind, character and description of the house charged in the indictment—the keeping of which is a misdemeanor.

From a careful examination of the instructions, I am unable to discover that the jury may or could have been misled by the alleged erroneous words or statements made use of, simply to make plain and simplify the issues to be passed upon by the jury.

Let the judgment of the court below be affirmed, and the case remanded to the District Court of Yankton County for further proceedings according to law.

The Chief Justice and Justice BENNETT concur.