## STATE v. BALLEW.

Under Session Laws of 1903, c. 154, § 3, evidence of general reputation held to show that the house was a bawdyhouse.

In a prosecution for keeping a bawdyhouse the court charged the jury if the defendant was the keeper, etc., "or was concerned or aided or abetted in the keeping of said house," etc. **Held,** that the the word "concerned" was used in connection with the keeping and was not erroneous.

In a prosecution for keeping a bawdyhouse the court closed its charge by directing the jury to find a verdict according to the evidence. **Held,** that there was no merit to defendant's contention that the last instructions should have dealt with the presumption of innocence, etc., when a full charge on that point has been given.

(Opinion filed November 26, 1910.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Frank A. Ballew was convicted of keeping a house of ill fame and appeals. Affirmed.

N. P. Bromley and T. H. Null, for appellant. S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen., and Wm. Issenhuth, State's Atty., for the State.

CORSON, J.   Upon an indictment duly found by a grand jury, the defendant was convicted of the crime of keeping a house of ill fame and from the judgment and order denying a new trial, he has appealed to this court.   At the close of the evidence on the part of the state, counsel for the defendant moved the court to advise the jury to return a verdict of not guilty upon the following grounds: "First, that there is no evidence that the defendant now on trial is the proprietor, either personally or jointly with the other defendant, of the house alleged to be a house of prostitution. Second, there is no evidence before the court showing that any person or persons resorted to this house within the three years next prior to the finding of the indictment for the purpose of prostitution and lewdness."   This motion was overruled by the court, and to this ruling the defendant excepted and now assigns the same as error.

It is also assigned as error that the court erred in certain instructions given by it to the jury and in denying defendant's motion for a new trial.   Mae Ballew was included in the indictment, but for reasons not disclosed by the record, the defendant had a separate trial.

The indictment was evidently drawn under the provisions of section 1, c. 154 of the Session Laws of 1903, which reads as follows: "Every person who keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness, shall be punished by imprisonment in the state prison not less than six months nor more than five years."

In order to convict the defendant it was necessary to prove that the house kept was a house of ill fame, that the defendant was the keeper of such house, either individually, or in connection with Mae Ballew, and that the house was resorted to for the purpose of prostitution or lewdness.   It was clearly shown by the evidence that the house kept by the defendant and Mae Ballew was a house of ill fame, as a number of witnesses, on the part of the state, testified that the house had the general reputation of being a house of ill fame.

Section 3, c. 154 of the Session Laws of 1903, provides as follows: "The state upon the trial of any person indicted or

against whom an information has been found for keeping a house of ill fame, may for the purpose of establishing the character of the house kept by the defendant, introduce evidence of the general reputation of the house as so kept." The Legislature, by the adoption of this section, followed the decision of the late territorial Supreme Court in the case of Territory v. Chartrand, 1 Dak. 379, 46 N. W. 583, and approved in the case of Territory v. Stone, 2 Dak. 155, 4 N. W. 697.

That the character of the house kept might be proved by reputation seems not to be questioned by counsel for the defendant in this case. The first question, therefore, under appellant's motion to direct a verdict, is, Was there sufficient evidence for the jury to find that the defendant was the keeper of the house by himself or in connection with Mae Ballew?

It is disclosed by the evidence that the defendant and Mae Ballew resided in a house about one and a half miles west of the city of Redfield; that the defendant caused to be constructed an addition to the house when first locating there and paid for the same; that he purchased a part of the supplies in the way of meat, groceries, and lager beer for the house and paid for the same.

Several witnesses on the part of the state testified that they had known the defendant and Mae Ballew for three or four years, and that they resided out about a mile and a half from Redfield. It was also proven that the girls living in the house were taken to town and back in a hack belonging to a livery man in Redfield, and that defendant paid their hack fare; that he went to the town of Redfield almost daily and on several occasions took men back with him to his home.

There was a large mass of evidence bearing upon this question on the part of the state which was uncontradicted, but we do not deem it necessary to reproduce the same in this opinion, as we think it is clear that the evidence would have fully warranted the jury in finding that he, in connection with the other defendant, was the keeper of the house and took part in its management and had full knowledge of all the transactions had therein; and hence the court would not have been justified in advising the jury as requested.

The second ground of the motion, viz., that there is no evidence before the court showing that any person or persons resorted to this house within the three years next prior to the finding of the indictment for the purpose of prostitution and lewdness, is clearly untenable.    There was evidence tending to show that there was from two to four girls who lived in the house and that their conduct was such as is usual by girls living in a house of ill fame; that in the evening they were frequently seen to dance with men who frequented the house; that they solicited such persons to purchase beer and that they supplied them with beer, and that the parties so supplied paid money therefor; that men were taken to the house from the city of Redfield in a hack in the early part of the evening and left there, and that later in the night the hackman returned and took the parties so taken there back to the city; and that intoxicated men resorted to the place, and that a large amount of beer was purchased and drunk by the girls and persons who visited there.    These facts, taken in connection with the reputation of the house that it was a house of ill fame, was, in our opinion, sufficient to warrant the jury in finding that it was a house resorted to for the purpose of prostitution and lewdness.

In this class of cases it is very difficult, if not impossible, to procure positive evidence that persons resorted to the house for purposes of prostitution, as the parties to such a transaction usually observe great secrecy and are unwilling to disclose their connection with the same.    The state therefore is necessarily compelled to rely upon circumstantial evidence to prove that the house was resorted to for purposes of prostitution or lewdness, but when it affirmatively appears that men, in the night time, resort to such a house generally reputed to be a house of ill fame, where girls of doubtful reputation live, a jury may be fairly warranted in finding that persons so resorting to such house, go there for the purpose of prostitution or lewdness.

In this case, we are clearly of the opinion that the evidence would have warranted the jury in finding from the evidence, beyond a reasonable doubt, that persons did resort to said house for

the purposes of prostitution and lewdness. As before stated, the conduct of the inmates of the house, and that men resorted to the same in the night time, considered in connection with the general reputation of the house, was such that no reasonable juror could have doubted the purpose of the parties resorting to the said house. The court was therefore clearly justified in denying appellant's motion to direct the jury to find a verdict of acquittal.

It is further contended by the appellant that the court. erred in its charge to the jury wherein the court charged "that if the defendant was concerned in the maintenance of this house or concerned in the commission of the offense it would be the duty of the jury to return a verdict of guilty." An examination of the charge of the court fails to disclose such language used by him, but the court did charge the jury, "and you must also find, beyond a reasonable doubt, that the house in question was a house of ill fame at the time in question; that it was resorted to for purposes of prostitution or lewdness, that the defendant was the keeper or one of the keepers thereof, or was concerned or aided or abetted in the keeping of the said house of ill fame for the purpose of prostitution or lewdness." It will be observed that the language of the court is "or was concerned or aided or abetted in the keeping of the said house," and that the word "concerned" was evidently used in connection with the keeping of the house, and that the court committed no error in this part of his charge. This part of the charge was clearly correct.

It is further contended by the appellant that that part of the charge of the court in which he charged the jury, "if you believe from the evidence in this case, or from the lack of evidence in this case, that the defendant is innocent, it is equally your duty to say so by your verdict." It is contended by appellant that these were practically the last words to the jury and constitute reversible error, as it leads the minds of the jury away from the rules concerning reasonable doubt, and the presumption of innocence, but there. is no merit in this contention. The court had repeatedly stated to the jury in his charge which is very full, fair, and impartial, that to find the defendant guilty they must be satisfied of his

guilt beyond a reasonable doubt, and the court committed no error in omitting this qualification in this part of the charge. The contention of the appellant that the verdict of the jury was not sustained by the evidence is, in our opinion, without merit. After a careful examination of the evidence, we are fully satisfied that the jury were warranted in finding the defendant guilty of the offense charged in the indictment and that the court was clearly right in denying the motion for a new trial.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

WHITING, P. J., and McCOY, J., took no part in this decision.