## TERRITORY OF DAKOTA, Defendant in Error, *v.* KEYES, Plaintiff in Error.

### 1. Rape, Assault with Intent to—Indictment—Sufficiency.

An indictment for assault with intent to rape, charging that K., in and upon one M., did make an assault, and her, the said M., did then and there beat and ill-treat, with the intent to commit the crime of rape upon her. the said M., she, the said M., then being a female under the age of 10 years, *held* sufficient.

### 2. Same.

In the case of an indictment for an assault with intent to rape a child under the age of consent. it is not necessary to allege that it was done without her consent, and in such case, the assault being charged, force is implied.

### 3. Same—Sufficiency of Evidence.

On the trial of an indictment for an assault with intent to rape a child of tender years, it appeared to have been done at the house of the defendant. when they were alone; that all of the facts relating to it were testified to by her; that she was corroborated by a statement of the occurrence made immediately thereafter to the mother, who saw her coming from the house; this being all of the testimony as to the offense, (the defendant not testifying,) and the same having been submitted to the jury on a proper charge, *held,* the court would not disturb the verdict.

### 4. Testimony not Objected to—Review.

The appellate court will not consider the question of the admissibility of testimony to which no exception has been taken.

### 5. Rape, Assault with Intent to—Consent, when Immaterial.

In the case of an assault with intent to rape a child under the age of consent, evidence as to consent is immaterial.

**6. Same—Impotency no Defense.**

> Impotency is no defense to an assault with intent to commit a rape.

**7. Instructions.**

> The court charged the jury: "Should this court make errors, it will not only be ready this to correct, but there stands a higher court above that will protect the rights of the defendant." *Held* not error. FRANCIS, J., dissenting.

( Argued May 16, 1887; reversed, May 26; opinion filed May 22, 1888.)

Error to the district court of Davison county; Hon. BARTLETT TRIPP, Judge.

*G. L. Faust,* for plaintiff in error.

All of the elements of the offense, and the means to effect the crime, must be charged. The use of the word "rape" is not sufficient. 5 Crim. Law Mag. 610; 2 Bish. Crim. Proc. 82, 976, n.; Bish. Div. & F. 803; 1 Russ. (7th Ed.) 693, 697.

The proof must show that the defendant intended to use force to the extent of rape. *Stephen* v. *State,* 8 N. E. Rep. 94; 1 Bish. Crim. Law, 203, 733; 2 Bish. Crim. Law, 979; 4 Crim. Law Mag. 274; *Sanford* v. *State,* 12 Tex. App. 125; *Sadler* v. *State,* 12 Tex. App. 194; *Smith* v. *State,* 80 Amer. Dec. 367, n.; Lawson, Pres. Ev. 271, 272, 274; Best, Ev. 728. The court erred in its instruction with reference to consent. *Smith* v. *State, supra;* 8 N. E. Rep. *supra;* Bish. St. Crimes, 946; Desty, Crim. Law, 33, note 2; May, Crim. Law, 56; 19 Amer. Law Rev. 833; *O'Mera* v. *State,* 17 Ohio St. 518; *Knapp* v. *Thomas,* 39 Ohio St. 385; *State* v. *Pickett,* 11 Nev. 255; *Mitchell* v. *Com.* 78 Ky. 205; *Pollard* v. *State,* 2 Ia. 567.

The court's instructions with reference to impotency would force the defendant to testify to his knowledge of his condition. The court erred in its charge with reference to errors made by it. Hill. New Trial, 289.

The statements made to the mother ought to have been excluded. 2 Bish. Crim. Proc. 960, 962; 5 Crim. Law Mag. 610.

*C. F. Templeton,* Atty. Gen., and *J. L. Hannett,* for defendant in error.

The first point made is that the indictment does not charge a public offense.

It is not necessary to set out in an indictment more than the ultimate facts required to be proven. Tested by this rule, the indictment was clearly good. It was not necessary to allege that the assault was without the consent of the prosecuting witness, for the reason that she was under 10 years of age, and, in law, could not consent. It was not necessary to allege that the act was done with force, for the assault being charged, and the female being under 10 years of age, *force* is necessarily implied. See cases cited below.

The second ground for reversal urged by counsel is that the evidence does not show an *intention* on the part of accused to commit rape. The acts of defendant constituting the assault were before the jury, and were sufficient to justify the jury in finding a criminal intent. The general verdict was a necessary finding upon this point.

Evidence of intent is always presumptive from facts proven, except when accused testifies in his own behalf or has made confession to others.

The third assignment of error raises the question as to the correctness of the court's charge to the jury upon the subject of consent.

The court instructed the jury that, if the defendant attempted to have carnal intercourse with the prosecuting witness, he would be guilty of the crime charged in the indictment, even though she consent.

On this point the courts are not in harmony, but we believe the instruction to be sustained by the better line of authority. *Hays* v. *People,* 1 Hill, 351; *Singer* v. *People,* 13 Hun, 418; *State* v. *Johnson,* 76 N. C. 209; *Oliver* v. *State,* 45 N. J. Law, 46; *Frizell* v. *State,* 25 Wis. 369; *People* v. *McDonald,* 9 Mich. 150; *Mayo* v. *State,* 7 Tex. App. 342; *Com.* v. *Rooswell,* 8 N. E. Rep.

747; *People* v. *Gordon*, 11 Pac. Rep. 762; Whart. Crim. Law, (8th Ed.) § 577.

The cases in this country holding the opposite doctrine, are: *Smith* v. *State*, 12 Ohio St. 466; *Stephens* v. *State*, 8 N. E. Rep. 94; *State* v. *Pickett*, 11 Nev. 255; *Garrison* v. *People*, 6 Neb. 274.

The next point involves the correctness of the court's charge to the jury upon the subject of impotency.

As to this there is a conflict between the English and American authorities, the English cases holding that impotency is a valid defense to a charge of assault with intent to rape. The American courts and writers hold that the rule laid down by the court is the better doctrine.

The essence of the crime is the outrage of the person and feelings of the female. P. C. § 322. The feelings of a woman may be outraged by the force and brutality of a man who is impotent as well as a man who is not.

An assault, as defined by our laws, does not imply an ability to consummate the attempted act. P. C. § 305.

Impotency is therefore no defense. *Com.* v. *Greer*, 2 Pick. 380; Barb. Crim. Law, 114; 1 Whart. Crim. Law, (8th Ed.) 184, 552; 1 Bish. Crim. Law, 737, 742, 752; 2 Bish. Crim. Law, 32.

As regards other crimes, it has been frequently held that inability to accomplish the principal crime is no defense to an indictment for an attempt. *Kunkle* v. *State*, 32 Ind. 231.

The court did not err in its charge with reference to there being a higher court that would protect the rights of the defendant. *U. S.* v. *Adams*, 2 Dak. 305.

McConnell, J. The defendant in the court below was tried and convicted under an indictment charging him with the crime of assault with intent to rape a female child under the age of 10 years. Motions for a new trial and in arrest of judgment were made and overruled, and the defendant was sentenced to the penitentiary for the term of three years and six months. The defendant brings the case to this court for review upon a writ of

error, and makes several assignments of error. We will consider each in the order presented.

1. It is urged that the indictment is not sufficient to charge a public offense. The material part of the indictment complained of, is as follows: "That Edwin H. Keyes, * * * in and upon one Ruby Milliken, then and there being, did make an assault. and her, the said Ruby Milliken, did then and there beat and ill-treat, with intent to commit the felony of rape upon her, the said Ruby Milliken, she, the said Ruby Milliken, then being a female under the age of ten years."

The defendant's counsel contends, citing several authorities, that an indictment for an assault with intent to commit rape is fatally defective unless it sets out the intended means to effect the crime, to-wit, force, threats, or fraud; that in such cases the use of the word "rape" is not sufficient; that all the elements of the intended offense must be charged.

We think, however, that the indictment is sufficient. It was not necessary to allege that the assault was without the consent of the prosecuting witness, for the reason she was under the age of 10 years, and in law could not consent. It was not necessary to allege that the act was done with force, for, the assault being charged, and the female being under the age of 10 years, *force* is necessarily implied. It is not necessary to set out in an indictment more than the ultimate facts required to be proven. Tested by this rule, the indictment is clearly good. Sections 223, 493, 537, Crim. Pro. Dak.; *Singer* v. *People*, 13 Hun, 418; *Com.* v. *Sugland,* 4 Gray, 7; *Com.* v. *Fogarty*, 8 Gray, 489; *Fizell* v. *State*, 25 Wis. 364.

2. It is next urged that the evidence does not show an *intention* on the part of the accused to commit rape. We have examined the evidence, and think that it justified the verdict.

The acts of the defendant constituting the assault were before the jury, and, a proper charge from the court having been given, the general verdict was a necessary finding upon this point. The only witnesses for the prosecution were Ruby Milliken, the prosecuting witness, and Alice Milliken, her mother,

corroborating her by the girl's statement made to her immediately after the assault, and the further fact that she saw the girl coming from the defendant's house; the defendant being at the time in the house alone. The only witness for the defense was Dr. Andros, upon the question of defendant's impotency. The defendant did not avail himself of his privilege of becoming a witness.

3. It is next urged that the trial court erred in allowing Alice Milliken to testify as follows: "*Question.* Did your daughter tell you after she had been at Mr. Keyes' that Mr. Keyes had taken her upon his lap? What, if anything, did your daughter tell you in reference to what was done? *Answer.* She told me as soon as she got home that Mr. Keyes took her into the house, took her upon his lap, unbuttoned her drawers and his pants, and put his privates with hers." She also testified that her daughter was but nine years of age.

This is one of the assignments of error, and is pressed upon us in the brief of defendant's counsel. In looking at the transcript we find that this question was allowed, and the answer was given, without objection. Neither was there any motion to strike such testimony from the record. No exception was saved, and we therefore shall not pass upon the question as to the admissibility of such testimony.

While it has been held that such testimony is inadmissible, yet our attention has been called to the following authorities holding that such testimony is proper, especially where the injured party is a girl of tender years. "The particulars of the statements made by the complainant witness cannot be given in evidence, except in a case where the person ravished is very young." *Hannon* v. *State*, (Wis.) 36 N. W. Rep. 1; *People* v. *Gage*, (Mich.) 28 N. W. Rep. 835; *State* v. *De Wolf*, 8 Conn. 93; *State* v. *Byrne*, 47 Conn. 465; *Phillips* v. *State*, 9 Humph. 246; *State* v. *Mitchell*, 89 N. C. 521.

4, 5. It is next urged that the court erred in not allowing Ruby Milliken, the prosecuting witness, to answer the following question, put to her by the defendant's counsel: "Did you stay

with Mr. Keyes that time because you wanted to?" We will. consider this in connection with the fifth assignment of error, relating to the charge of the court upon the question of consent.. The charge of the court complained of is as follows: "This de-- fendant stands charged in this court of the crime of assault with intent to commit rape. The indictment charges that the age of the child upon whom this assault is alleged to have been com-- mitted, is under the age of ten years. This is an essential al-- legation of the indictment, because, under the wise provision of law which is enacted for the benefit of society and mankind, no- child under the age of ten years is in law capable of giving con- sent. A man who has intercourse or attempted intercourse with a child under the age of ten years, which may be so far per-- fected that there is the slightest penetration, is guilty of rape in the first degree. A man who intends to have any carnal con-- nection with a child under the age of ten years, and does any act towards that sufficient to make an assault, is guilty of an assault with intent to commit rape, even though the child con- sents. There can be no consent in law. You will readily un-- derstand the wise provision of such a law. In this case I charge you that, if you find that this defendant attempted intercourse with this child, even though she consent, he is guilty of an as-- sault with an attempt to commit a rape, under the statute." ·

The question here involved has frequently been before the· courts both of England and this country, and, while the Eng-- lish courts have almost uniformly held that consent is no defense to the substantive crime when the child is under the age of 10 years, it must be conceded that those courts, prior to act of parliament in 1880, almost invariably held that consent of such child is a good defense to the charge of assault with intent to commit the crime. As to the principal crime the decisions of the courts of this country are in harmony with those of En-- gland, but as to the incipient crime there is a decided conflict.. The difference of opinion in the courts upon this point has arisen from the different answers given by the respective courts to the· following question: Can there be an assault, *as a matter of law,.*

when there is formal consent, and the substantive crime is not accomplished? When it is remembered that the completed offense is but a continuation or aggravation of the *felonious assault in law,* and it being conceded by all that, when accomplished, the child's consent does not eradicate the *assault in law,* by what principle of law, logic, or reasoning can it be maintained that such consent eradicates the *assault in law,* as to the incipient crime? Though the child formally and apparently consent, nay, even though she solicit the act, yet in reality and in law it is no consent. Therefore we think that the trial court was right in excluding the evidence as to whether or not the child consented, and that there was no error in the charge to the jury upon the question of consent. *Hays* v. *People,* 1 Hill, 351; *Singer* v. *People,* 13 Hun, 418; *State* v. *Johnson,* 76 N. C. 209; *Oliver* v. *State,* 54 N. J. Law, 46; *Fizell* v. *State,* 25 Wis. 369; *People* v. *McDonald,* 9 Mich. 150; *Mayo* v. *State,* 7 Tex. App. 342; *Com.* v. *Roosnell,* (Mass.) 8 N. E. Rep. 747; *People* v. *Gordon,* (Cal.) 11 Pac. Rep. 762; Whart. Crim. Law, (8th Ed.) § 577.

The cases in this country in conflict with this doctrine are: *Smith* v. *State,* 12 Ohio St. 466; *Stephens* v. *State,* (Ind.) 8 N. E. Rep. 94; *State* v. *Pickett,* 11 Nev. 255; *Garrison* v. *People,* 6 Neb. 274. Also, Bish. St. Crim. §§ 498, 499.

In *Smith* v. *State, supra,* Judge Peck says: "Two things must concur to authorize a conviction under the 17th section: there must have been an assault, coupled with an intent to commit a rape upon the person assaulted. An assault implies force upon one side, and repulsion, or at least want of assent, upon the other. An assault, therefore, upon a consenting party, would seem to be a legal absurdity." In that case Judge Brinkerhoff dissented, on the ground of the reasoning of the court in *Hays* v. *People, supra.* In *Stephens* v. *State, supra,* Judge Niblack says: "The question as to whether a female child under the age which disqualifies her from assenting to sexual intercourse may so far consent to the taking of improper and indecent liberties with her person as to relieve such liberties of

their unlawful and indictable character, is one which has received some attention both in England and in this country, but is a subject upon which the authorities are not numerous, and are very considerably in conflict. But the difference between the statutes or systems of jurisprudence upon which some of the decided cases rest is sufficient to account for the conflicting conclusions respectively reached by them." In that case Judge ELLIOTT dissented.

6. The next point urged by counsel for plaintiff in error is as to the court's charge to the jury upon the subject of impotency. That part of the charge complained of is as follows: "I charge you as a matter of law that impotency in a case of this kind—that is, an assault to commit rape—is no defense, at least unless it be coupled with the further proof that the defendant himself knew of that impotency; then it might be admissible in evidence to go to the question of intent, but no further." As to the correctness of the rule of law as stated in this instruction, there is a conflict in the authorities; some of them holding that impotency is a valid defense to a charge of an assault with intent to commit the crime of rape. We think, however, that the rule as stated in this instruction is the better doctrine.

The essence of the crime is the outrage of the person and feelings of the female. The feelings of a woman may be outraged by the force and brutality of a man who is impotent as as well as of a man who is not. "The essential guilt of rape consists in the outrage of the person and feelings of the female. * * *" Section 322, Pen. Code Dak. "An assault is any willful and unlawful attempt or offer, with force or violence, to do a corporal hurt to another." Section 305, Id. As an assault, as defined by our Code, does not imply an ability to consummate the attempted act, impotency cannot be a defense to the charge of an assault with intent to commit the crime of rape. "Impotency is undoubtedly a sufficient defense to an indictment for the consummated offense, though not for an assault with intent." 1 Whart. Crim. Law, (8th Ed.) § 552; 1 Bish. Crim.

Law, §§ 737, 738; Barb. Crim. Law, 114; *Com.* v. *Green*, 2 Pick. 380; *Kunkle* v. *State*, 32 Ind. 231.

7. The next point urged is in reference to the court's charge: "Should this court make errors, it will not only be ready this to correct, but there stands a higher court above that will protect the rights of the defendant." We do not think there was any error in this portion of the charge. Even if there was, we cannot see that the defendant was prejudiced thereby. *Young* v. *Harris*, (Dak.) 32 N. W. Rep. 97; *Territory* v. *Chartrand*, 1 Dak. 379; *U. S.* v. *Adams*, 2 Dak. 305; *Spencer* v. *Tozer*, 15 Minn. 146, (Gil. 112;) *Laurel* v. *State Nat. Bank*, 25 Minn. 48; *Vicksburg & M. R. R. Co.* v. *Putnam*, 118 U. S. 553, 7 Sup. Ct. Rep. 1.

There being no error in the record, the judgment of the district court is affirmed.

All the justices concurring, except FRANCIS, J., who dissents.

FRANCIS, J., *(dissenting.)* In dissenting from the foregoing opinion, I shall not discuss the main questions brought under review in this case, and concerning which courts have expressed conflicting views, and shall only refer to one of the errors assigned, which seems to me, of itself, to warrant a reversal of the judgment below. The defendant may have been guilty of an assault, but not "with intent to commit a rape," for which he was convicted. His act was a very degraded and beastly one, and, morally considered, he may be justly suffering punishment. But, legally considered, he is not, in my view, lawfully restrained of his liberty for the crime of which he was found guilty, and for the punishment of which his term of imprisonment was measured. In charging the jury, the learned chief justice, holding the district court, said: "Should this court make errors, it will not only be ready this to correct, but there stands a higher court above, that will protect the rights of the defendant." This I regard as error. The error was not in what the court said, considered by itself, as a mere statement, but in saying it at the time and place. When once said,

as part of the charge, it was capable of a construction or application tending to prejudice the defendant, and was the only reference in the charge to the subject-matter it related to, and was therefore unqualified by anything else in the charge. It was a statement by the court, in a criminal case, that there might be errors on its part; and that if the jury acted under the influence of such errors, or any of them, the defendant, if he suffered thereby, would be protected by the higher court. It was as if the court had said: "There may be some doubt about the correctness of the law stated by me as applicable to the act of the defendant for which he is upon trial; but if he ought not to be convicted, and you take that law, and, applying it to the evidence in the case, find him guilty, he will nevertheless be protected in his rights if he goes to the higher court."

It is the right of every defendant on trial for any offense to have his trial confined to the law of and the evidence in the case. So, especially under the circumstances of this case, it was the right of the defendant that the jury (who would have needed very little moving force or influence to impel their own natural inclinations against the crime with which he was charged to the point of finding him guilty) should only be moved or influenced by the law and the evidence properly in the case.

If that portion of the charge before quoted influenced the jury, (and who shall say, with certainty, that it did not,) then is it not probable such influence was not in favor of the defendant, but against him?

That portion of the charge referred to was not a statement of the law, nor was it a statement of any fact or thing sworn to, or offered in evidence, but it was an allegation of an existing or possible fact, or of mixed questions of law and fact, not in the case in its trial in the district court, and with respect to which there was no evidence and no issue raised, and a declaration of something uncertain that might not then exist, and might not occur thereafter, namely, that the court might have committed or might commit errors in the trial, and that, if it had or

should, there was a higher court that would protect the rights of the defendant. And so the jury may have reasoned that, if there was a higher court, that would protect the defendant from the effect of any errors which the trial court might commit, then that same higher court would right any wrong which might be in their verdict, and that it was not, therefore, necessary for them to very carefully consider or weigh the case, since their verdict, if unjust to the defendant, would be set aside by the higher court, to which they may have practically relegated him.

When the case reached this court, the prisoner was entitled to the very protection at the hands of the higher court which the lower court admitted and asserted he was entitled to, and which, in my judgment, has not been extended to him.

This court, in the language of the opinion, speaking of that portion of the charge heretofore alluded to, say: "We do not think there was any error in this portion of the charge. Even if there was, we cannot see that the defendant was prejudiced thereby."

The first conclusion is based upon an assumption of knowledge as to what will not influence the minds, acts, and verdicts of jurors, which cannot be attained in the realm of reason, and in seeking after which we can never advance beyond the environments of mere speculation.

The second conclusion (as to the prejudice to the defendant) is also an assumption that involves the impossible determining or measuring of the nature, extent, and effect of the influence of said portion of the charge upon the minds, deliberations, and opinions of the jurors.

How can it be reasoned out that these remarks in the charge did not influence the jury? And, if they did, how can it be demonstrated or determined in reason that such influence was not against nor prejudicial to the defendant? What the court thinks does not exist, and what the court declares it cannot see, may in reality exist. The extent of our mental discovery is limited by the extent of the effort made to see or discover what is sought after. This declaration of the supreme court is an

admission that the error, and the prejudice therefrom, may exist, but have not come within the range of the vision of the court, and have not, therefore, been discerned.  It was or was not an error in the trial court to give to the jury, as a part of its charge, the words complained of.  If it was an error, it was either prejudicial to the defendant, or was not prejudicial to him.  If it was prejudicial to him, no one would have the legal hardihood to affirmatively declare that the prejudice did not affect him in a substantial right.  The remarks of a court, in its charge to the jury, in expressing its own views, or in stating what does or does not, or may or may not, exist or occur, will naturally have more influence or effect upon the jury than the mere rulings of the court in admitting or excluding evidence.

The court must conduct the trial on its part, and on the part of all concerned therein, in the manner designated by law, and within the rules of correct practice.  The state may use all the weapons, and no others, authorized by constitutional laws for the prosecution of the prisoner, and he, in turn, is entitled to every shield, weapon, and defense given to *him* by constitutional laws to strike down, ward off, or break the force of the state's weapons. And if he is vanquished by the use of a weapon not legally permitted to be used in the combat, or it appears that any wound, disability, or injury received by or inflicted upon him, which led, or may have led, to his being vanquished or finally worsted, was caused or may have been caused, or assisted in its infliction, by the use of said unauthorized weapon, or by the use of an authorized weapon in an unauthorized manner or for an unauthorized purpose, whether used by the court itself, or permitted by the court to be used in the conflict, he may demand, and should be accorded, a new trial of strength in the legal arena above which the trial court sits as an umpire, whose rulings are subject to review and correction in the appellate tribunal.  The defenses, weapons, and shields furnished by the law to persons charged with crime are very numerous, and, in my opinion, by their number and effectiveness, tend to encourage rather than to prevent or diminish crime; but the responsibility of enacting laws

is not upon the courts whose province is to expound, and then apply and enforce, constitutional laws when made, and every defendant may claim and should have every advantage in the law which he may rightfully invoke, one of which is that he shall not be prejudiced or injured in or be deprived of any of his substantial rights by any error at his trial.

An error may consist in subjecting a litigant to the application or effect of an erroneous statement of law, or of a correct legal principle or provision not properly applicable to his case; or in depriving him of the benefit of some legal provision or principle to which his case, as it stands before the court, on the law and the evidence, entitles him; or in admitting or injecting into the case something outside of or foreign to the issues involved in it, which may, after it gets into the case, or upon the record, work to his disadvantage, or impair his substantial right; or in refusing to admit, or in striking out when once admitted, something which should have been let in or allowed to remain, and which, had it been suffered to enter or to remain, would or might reasonably have been of advantage to him.

There are doubtless, some cases in which it may be ascertained and declared, with tolerable clearness, that an error, admitted to exist, did not and could not prejudice any substantial right of the defendant. But this is not such a case.

When it does not clearly appear that the error complained of could not or did not affect the defendant in a substantial right, he is entitled to the effect and benefit of his exception, if properly taken and saved, and of the assignment of error thereon if properly assigned.

In passing upon an error properly excepted to and assigned, in a case involving the life or liberty of the defendant, we should make, not the inquiry, generally impossible of certain answer, did it influence the jury unfavorably to the defendant? but the inquiry, which may more correctly be answered in reason and from an inspection of the case, namely, might the jury have been influenced by it, unfavorably to the defendant, in arriving

at their verdict, which declared him guilty, and certainly affected his substantial right, and does it satisfactorily appear that they were not?

And, on the hearing on writ of error, if it is evident that the jury might or may have been influenced by the error in reaching and rendering their verdict against the defendant, or it does not satisfactorily appear that they were not, the court cannot reasonably nor justly say that, even granting the existence of the error, it was not prejudicial to the defendant because the fact that it was prejudicial does not affirmatively appear. I will cite only two (conveniently at hand) from the many decisions fully sustaining my reasoning and conclusions as to said error. In *Jackson* v. *Water Co.*, 14 Cal. 25, (a civil case,) the court said: "We cannot see clearly that the defendants were not injured by this error. They might have been; but the rule is that every error is *prima facie* an injury to the party against whom it is made, and it rests with the other party clearly to show, not that probably no hurt was done, but that none could have been or was done by the error."

And in *Busenius* v. *Coffee*, 14 Cal. 94, (also a civil action,) the supreme court, in passing upon the refusal of the trial court to give an instruction asked by plaintiff's counsel, held: "We cannot undertake to determine to what extent the plaintiffs were prejudiced, or whether prejudiced at all, by the refusal of the court to give this instruction. The record does not, of course, furnish us with a perfect history of the trial, and, even if it did, the grossest injustice might be done if we should decline to interfere with the judgment upon the ground that the action of the jury was not influenced by the error of the court."

In *U. S.* v. *Adams*, 2 Dak. 305–332, 9 N. W. Rep. 718, the judge at the trial court, in charging the jury, used the following language: "If the court commits an error in giving you the law, there is a higher tribunal to correct it; but if the jury commits an error, if it is a verdict of acquittal, it is remediless. If the jury commit an error, and it is a verdict of guilty, then the defendant has a remedy by appealing to the court."

The case of *U. S:* v. *Adams* is cited in the foregoing opinion in this case, as authority for the views of the court on the error under consideration. The above language, in the charge in the *Adams Case*, should have been held as error. The supreme court, however, in passing upon it, (MOODY, J.,) held it not as error in that particular case, (for reasons which may have been satisfactory to that court, but cannot be fairly applied to this case,) and at the same time said : "If this language stood alone upon the subject, or if the case was one admitting of any doubt by a jury, although what is there said is strictly true, this court certainly could not have commended the use of it, but rather would be inclined to condemn it as at least useless, if not harmful." This is a careful and rather mild allusion to and criticism of the subject, but has, after all, considerable expression.

Considering the error mentioned, and viewing the entire case in the light of the law appearing to me to be applicable to it, and on the whole record before us, I am of the opinion that the judgment of the district court should be reversed.