BANNEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 19—October 21, 1902.*

*Rape: Assault with intent: Evidence: Instructions: Reasonable*
*doubt: Trial: Remarks by court: Leading questions: Immaterial*
*errors: Evidence of complaint by prosecutrix and of her nervous*
*condition: Previous relations with accused.*

1. On a trial for rape, although the testimony of the prosecutrix that defendant actually committed that crime was inconsistent with other parts of her testimony, the evidence is *held* sufficient to sustain a conviction of the crime of an assault with intent to commit rape.

2. After instructing the jury that if they found that the accused in-- tended to have intercourse with the girl "only in case she would consent thereto," or if they had any reasonable doubt as to whether the acts of the accused were invited or consented to by her, then they should give defendant the benefit of the doubt by finding him not guilty, the court further instructed, in effect, that if they did not find defendant guilty of rape, and were convinced that he assaulted prosecutrix with intent to ravish and carnally know her by force, then they should find him guilty of assault with intent to commit rape, but that in order to warrant such conviction the assault must be made with the intent and purpose to compel the woman to submit to him by force and against her will; that to take hold of and handle a woman with intent to gain her consent would not amount to such assault. *Held*, not objectionable as telling the jury that it was immaterial what amount of force the accused might have intended, but that if he intended to use any force he might be convicted.

3. It is proper to charge the jury that a mere fanciful or specula- tive doubt, such as a skeptical mind may suggest, does not amount to a reasonable doubt, and that a doubt which ignores a reasonable construction of the whole evidence and proceeds upon mere speculation or suspicion is unreasonable.

4. After the jury had retired they returned into court and asked whether the condition of the prosecuting witness's clothing after the commission of the alleged crime was admitted in evidence. The court then stated that the testimony of all the witnesses which they had heard upon that point was admitted as proper evidence, and it was for them to consider and reconcile any dif- ferences if possible, and come to an agreement as to the truth about the clothes if they should find that to be an important matter for consideration in arriving at a verdict, but declined to repeat the testimony, because, if he should misstate any of it, it would be error. *Held*, that there was no error in the re- marks of the court.

5. Refusal to give instructions substantially covered by other in- structions given is not error.

6. Where defendant was convicted only of an assault with intent to commit rape, errors in instructions or in rulings upon evidence relating only to the crime of rape are immaterial.

7. Permitting leading questions to be asked of the prosecutrix, a girl fourteen years old, is *held* in this case not to have been an abuse of discretion.

8. Where prosecutrix testified that she had on a pair of dark, drab- colored drawers at the time of the attempted rape, and on cross-

examination stated that on the morning in question she had left some white drawers in the room where she stayed, it was not error to exclude a question as to what the white drawers were kept in, nor, when she was asked whether she had a trunk or valise, for the court to state, as the fact was: "She has already said that part of them were hung up and part on a chair."

9. Witnesses who visited the home of the prosecutrix on the day in question were properly allowed to testify as to her frightened and nervous appearance and, without giving details, that she made complaint of the alleged ravishment.

10. So, also, a physician who visited and examined her next day was properly allowed to testify as to her nervous condition.

11. Where defendant was found guilty of an assault with intent to commit rape, the exclusion of evidence to show the previous relations existing between him and the prosecutrix, even though it was not intended to show that such relations were improper or that her general character or reputation was bad, was a material error, since such evidence would have had a direct bearing on the question of intent.

ERROR to review a judgment of the circuit court for Crawford county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Upon an information charging the plaintiff in error, *Richard Bannen,* with having committed the crime of rape upon one Ida Fosnow, Sunday, June 24, 1900, he was tried in the circuit court, and at the close of the trial, May 28, 1901, the jury returned a verdict whereby they acquitted him of the crime of rape, and found him "guilty of an assault with intent to commit the crime of rape." It is undisputed that at the time in question Ida was a little more than fourteen years of age, and weighed 125 pounds, and had been accustomed to do housework, and for six weeks just prior to the occasion she had been working for the mother of the accused, where he made his home at the time with his mother, his two sisters, and a younger brother. *Richard* was at the time nearly twenty-five years of age, and weighed 136 pounds. Ida's home was with her parents, who lived nearly a mile distant from Mrs. Bannen's house, if traversed by the roundabout line of the public highway, but very much less by a direct

line nearly east from Mrs. Bannen's house.  There was another roundabout way by a path, to a considerable extent a wagon road, through the field, starting from the highway at a gate about twenty-eight rods east from Mrs. Bannen's house to Ida's home, which was forty-seven rods nearer than by the public highway, and which Ida had been in the habit of taking.  That path ran in a northeasterly direction from that gate for some fifty rods, thence directly east for twenty-five rods, thence down to the bottom of the hill in a northerly direction some twenty-five rods to the place where the alleged rape occurred.  From that point the path extended for a short distance in a northerly direction, and then turned and ran to the east for a considerable distance, and then turned and ran in a southeasterly direction to the Fcsnow house.

Ida testified to the effect that the first time he had her down he held her wrists with one hand, and with the other touched her private parts,—raped her with his hand; and that the second time he threw her upon the ground and held her hands with one of his, and pulled her dress skirt loose with the other hand; that she was then on her back, and he was on top of her; that she could hardly tell how he was upon her, or where his face was, but his body was on her, and his legs outside of hers, when, without her consent and against her will and by force, he had sexual intercourse with her; that she "hollered" and "screamed," and he finally let go of her, and she got up.  He lacked only five months of twenty-five years of age.  According to his version, he sat down under the shade of a tree; that while he was seeking to pull some quilt patches away from her, she swung around and sat down in his lap, with her dress partly up; that she reached her right hand around him after the patches which he had taken from her, and that he then kissed her and put his hand on her leg without any objection, and then up under her dress, and that, although she at first put her hand down over his, she then put her hands up to her head, and then he ran his hand

up to her body, but did not put his hand on her private parts, nor try to; that her legs were close together; that she then asked him to let her go, and he did let her go; that she had no drawers on; that she never made any request to get up until she got up; that he did not throw her down, nor hold her wrists, nor pull her drawers down, nor pull her skirt loose, nor do anything against her objection or wishes.

For the plaintiff in error there were briefs by *W. E. Howe* and *Ed. M. Lowry,* and oral argument by *Mr. Howe.*

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *R. F. Hamilton,* second assistant attorney general.

The following opinion was filed June 19, 1902:

CASSODAY, C. J. Counsel for the accused contends that, "if the testimony of the state is to be believed, the defendant is guilty of rape." He also contends that, since he was acquitted of that offense, the evidence is insufficient to convict him "of an assault with intent to commit the crime of rape." Sec. 4383, Stats. 1898. By reason of such contention we have given in the foregoing statement the substance of the testimony of the respective participants. The claim is that her testimony to the effect that he actually committed the crime of rape is inconsistent with a portion of her testimony. The inconsistency must be admitted, but it does not necessarily follow that there is no evidence that he made an assault with intent to commit the crime of rape. She was a young girl only a little more than fourteen years of age. Had she been less than fourteen years of age, she would, under the statute, have been incapable of giving consent. Sec. 4382. She was manifestly excited, and did not very clearly understand the meaning of the language employed. The accused concedes that when she got up she said that "she was going to tell her ma, and her ma would tell her pa," and he "would get a good scolding;" and, when asked if he

thought she felt insulted when she got up, he said, "Well, I did kind of. She acted a little poutish, was all." The girl's testimony is corroborated as to her crying and being excited when she got home, and "holding her clothes on her,"—having a skirt and pair of drawers on, and the drawers being torn,—and her telling her mother what the accused had done to her.

Assuming his version of the affair to be correct, then it is very difficult to perceive why she should go away angry, or how a girl of fourteen could make up out of whole cloth a story so different, and with so many details, as indicated in her testimony. We cannot hold that the evidence is insufficient to support the verdict. Of course, the crime of rape includes an assault with an intent to commit the crime of rape. The fact upon which they both seem to agree is sufficient to justify the jury in acquitting him of the crime of rape. If the jury were convinced beyond a reasonable doubt that by reason of such admitted fact, and her resistance and outcries, he finally desisted from an attempt to commit the crime of rape, then they were justified in finding as they did. *State v. Mitchell,* 89 N. C. 521. Such seems to have been the conviction of the jury.

2. Several exceptions are taken to the charge of the court. Some of them relate to the crime of rape, of which the accused was acquitted, and hence are not here involved, except in so far as they relate to the offense of which he was found guilty. Exception is taken because the court read to the jury the statute which declares that: "Any person who shall assault any female with intent to commit the crime of rape, shall be punished by imprisonment in the state prison not more than ten years nor less than one year." Sec. 4383. And then, after stating the circumstances under which they must acquit him of the crime of rape, the court said:

"If you do not find the defendant guilty of rape, and are convinced by the evidence beyond a reasonable doubt that the

defendant assaulted Ida Fosnow on June 24, 1900, with the intent to ravish and carnally know her by force and against her will, you should find him guilty under the statute last quoted, and the form of your verdict should be, 'We, the jury, acquit the defendant of the crime of rape, but we find him guilty of an assault with intent to commit the crime of rape.' I have already explained to you the meaning of the terms 'carnal knowledge,' 'carnally know,' and 'by force' and 'against her will,' and, in order to warrant a conviction of the defendant of an assault with intent to commit the crime of rape, you must be convinced by the evidence beyond a reasonable doubt that he laid hands upon Ida Fosnow, and threw her to the ground, and got on top of her, with the intent then and there to have carnal knowledge of her person by force, and against her will, within the meaning of those terms as I have explained. I will say by way of caution that to take hold of and handle a woman with the intent to gain her consent to sexual intercourse does not amount to an assault to commit the crime of rape. The assault, to be an assault with intent to commit the crime of rape, must be one where the assailant makes the assault with the intent and purpose to compel the woman to submit to him, and to have carnal knowledge of her person by force, and against her will."

The criticism is that by such instructions, taken together, the jury were told that it was immaterial what amount of force the accused might have intended to use at the time of the assault, but, if he intended to use any force at all for the purpose named, then he might be convicted. We do not think the portions of the charge quoted are subject to such criticism. Besides, the court had already charged the jury, at the request of the accused, to the effect that, if they found from the evidence that he intended to have sexual intercourse with her on the day named "only in case she would consent thereto," then that was "not such an intention" as would warrant them in finding him "guilty of an assault with intent to commit the crime of rape;" that if they entertained "any reasonable doubt as to whether the acts of the" accused "were invited or consented to by" Ida, they should give him "the benefit of such doubt" by finding him not guilty.

3. Error is assigned because, after charging the jury upon the subject of reasonable doubt in a manner calling for no exception, the court further charged the jury that:

"A mere fanciful or speculative doubt, such as a skeptical mind may suggest, does not amount to a reasonable doubt within the meaning of the law. A doubt such as this,—one that ignores a reasonable construction of the whole evidence and proceeds upon mere speculation or suspicion,—is unreasonable, and would acquit one proven guilty as easily as one not so proven, and so does not justify a verdict of not guilty."

It is enough to say that this language is justified by the decisions of this court. *Emery v. State,* 101 Wis. 627, 650–655, 78 N. W. 145; *Butler v. State,* 102 Wis. 364, 368–372, 78 N. W. 590; *Buel v. State,* 104 Wis. 132, 151–153, 80 N. W. 78; *Murphy v. State,* 108 Wis. 111, 119, 120, 83 N. W. 1112.

4. Error is assigned because, after the jury had been out all night, and returned into court, and submitted this question, "Was the condition of Ida Fosnow's shirt waist and dress admitted as evidence by the court as on the morning of June 24th, 1900?" the court then asked the jury, "Do you mean after the alleged crime committed upon her?" A juror answered in the affirmative, and the court then said to the jury:

"I may say to you this: That all of the testimony that you heard in court was admitted as being proper evidence by the court, and is all for your consideration. The testimony of herself and her mother and her father as to the condition of her clothes, as they claim, immediately after, also the testimony of the witnesses introduced by the defendant as to the condition of the clothes when they saw them, and as to the character of the clothes, as to the color, etc., all that was admitted in evidence by the court; and it is for you to consider it, and, if you find that there are differences, to reconcile them, if you can, and come to a common agreement as to where the truth is regarding the clothes, if you find that that is an important matter for your consideration in arriving at a verdict in this case."

The court then declined to repeat to the jury the testimony of the several witnesses on the subject, because, if the court happened to misstate the testimony, it would be error; that it was "the province of the jury, and the province of the jury alone, to determine what the testimony was in the case, and what facts should be deduced from that testimony." We perceive no error in such remarks of the court.

5. Error is assigned because the court refused to instruct the jury that:

"It is for you to consider whether in this case the woman resisted to the utmost; and in doing so you are to be guided by the testimony of the witnesses in this case as to the appearance of the place where the alleged offense took place shortly after the occurrence, its proximity to a public high-way, the time of the day at which it is alleged to have occurred, the appearance of Ida Fosnow shortly after the occurrence, the condition and appearance of the clothing that she wore, the fact of her remaining at the place after the occurrence to get her hat and the small pieces of cloth that she had been carrying."

The court had already instructed the jury to consider the evidence in the case with the greatest care for the reason that it was very important for the defendant, and also for the state, that:

"Every person accused of crime is presumed to be innocent, and this presumption attends throughout the trial, and should prevail at the end, unless met and overcome by evidence which establishes his guilt beyond a reasonable doubt."

And again, that:

"The charge of rape is one easily made, hard to be proved, and harder to be disproved by one, be he ever so innocent. It is a charge calculated to create strong prejudice against the accused, and it is my duty to caution you against being to any extent swayed or influenced by prejudice in your consideration of this case and in arriving at a verdict."

The court also charged the jury that:

"It is the duty of the jury to reconcile, if they can, the conflicting testimony upon the theory that each witness has told

the truth, or that each witness remembered it exactly; but where it is found that there is an irreconcilable difference, and some of the testimony must be thrown out, and the jury are convinced, upon consideration, that certain testimony is not correct, and that certain other testimony is, then it would be their duty to find the fact according to their conviction as to the truth."

The court further charged the jury that:

"If you are not convinced by the evidence beyond a reasonable doubt that the defendant is guilty of the crime of rape, or of the crime of assault with intent to commit the crime of rape, your verdict must be 'Not guilty.' "

The court throughout carefully refrained from expressing any opinion as to the weight of the evidence, or to emphasize any particular portion of the evidence. In other words, the instructions were confined to legal propositions, and not to the weight to be given to isolated portions of the testimony. This was not error. *People v. O'Neil,* 48 Hun, 36. The substance of the instruction so refused was, in effect, covered by the instructions given. We find no error in refusing to instruct as thus requested.

6. There are sixteen other instructions requested and refused. Some of them are argumentative. Others assume as true facts in dispute. Two of them requested the court to direct a verdict in favor of the accused, and have been sufficiently considered. See *State v. Mitchell,* 89 N. C. 521. Seven of them relate to the crime of rape, of which the accused was acquitted, and hence he was not aggrieved by such refusals. The others are substantially covered by the instructions given, or are not of sufficient importance to call for consideration. We perceive no error in refusing to give any of such instructions.

7. Numerous errors are assigned to the rulings of the court in the admission and exclusion of evidence. Some of these rulings consist in allowing leading questions to be put to Ida. It is well settled that the permitting of leading questions to

be put to a witness rests very much in the sound discretion of the trial court. *Barton v. Kane,* 17 Wis. 42; *Proper v. State,* 85 Wis. 626, 55 N. W. 1035; *Porath v. State,* 90 Wis. 537, 63 N. W. 1061; *Welsh v. State,* 60 Neb. 101, 82 N. W. 368; *People v. Bernor,* 115 Mich. 692, 74 N. W. 184. In view of Ida's age, and the circumstances, we cannot say that there was any abuse of such discretion in permitting such questions.

8. Ida claimed to have had on a pair of dark drab-colored drawers at the time of the attempted rape, which were in court at the time of the trial. On her cross-examination she testified that on the morning in question she left in the room upstairs, at Mrs. Bannen's, where she slept, some white drawers; and that she "did not leave anything but white drawers there." She was then asked, "What were they kept in?" We perceive no error in excluding the question. The white drawers were in no way involved in the controversy. She was then asked, "Did you have a trunk or valise?" The court then stated—as the fact was—that "she has already said that part of them were hung up and part on a chair." We perceive no error in such statement of the fact.

9. Several of such rulings related only to evidence bearing upon the alleged crime of rape. As the accused was acquitted of that charge, he was in no way aggrieved by such rulings.

10. After Ida had testified, without objection, that she told her mother, when she first got home, on the day in question, what *Richard* had done to her, and her mother had testified, without objection, to the effect that Ida came home crying on that day, and complained of her wrists hurting her, and of its hurting her lower down,—across the sexual organs, and the cause of it; that *Richard* had his own way with her; and that Ida looked as pale as a corpse, and acted nervous, as though she was frightened about something,—the state called a lady witness, who testified that she saw Ida on the evening of the day in question; that when she went there Ida was cry-

ing, and acting awful nervous, and made complaint of what had happened to her; and, under objection, stated that "she claimed to have pains in her female parts." She was then asked, "What did she say had happened to her, if anything?" On objection being made, the court excluded the question on the ground that perhaps the witness might state more than the law would permit. The state called another lady witness, who testified, without objection, to the effect that she saw Ida at her home on the forenoon of the day in question; that she seemed to be very nervous, and to be awful excited; that she was crying part of the time, and part of the time screamed out as though she was frightened; that she noticed red rings on her wrists, as though she had been held by the wrists. She was then asked this question: "What was it, if anything, that Ida told you had happened to her,—what complaint did she make?" In overruling an objection to the question, the court said, in effect, that she might tell what Ida said, but that the law would not permit her to give the details; that she might state generally what Ida said happened to her,— whether she had fallen down, or something else; and the witness was permitted to testify, against objection: "Well, I asked her, 'Ida, what's the matter with your wrists?' and she said, 'There is where that dirty, stinking, *Richard Bannen* held me by the wrists.'" Counsel for the accused objected as immaterial, irrelevant, and incompetent. *The court sustained the objection,* saying, "That is improper, because it goes into details;" and further said, in effect, that where one claims to have been raped, if complaint is made of the fact of rape to any one immediately, or very soon after, the fact that such complaint was made is a circumstance to be considered, but that the law forbids the person to whom such complaint is made from going on and giving all the details of what was said. The prosecution then asked this question: "Now, with the explanation of the court given you, will you state what complaint she made?" She then answered, without objec-

tion, to the effect that Ida did not make any complaint, only she was nervous, very nervous, and walked as though she was sore; but that she did not ask Ida what happened, and Ida did not state what happened. Such rulings are sustained by the adjudications of this court. Thus Mr. Justice TAYLOR, after citing numerous cases in support of the proposition, said:

"These cases all hold that it is proper for the prosecution to show that the complaining witness made complaint of the alleged ravishment, and that the person to whom the complaint was made may be called as a witness on the part of the state, and may testify that such complaint was in fact made; but the particulars of the statements made by the complaining witness cannot be given in evidence, except in a case where the person ravished is very young." *Hannon v. State,* 70 Wis. 451, 452, 36 N. W. 1.

The same rule has been repeatedly sanctioned in this and other courts. *Lee v. State,* 74 Wis. 45, 41 N. W. 960; *Territory v. Keyes,* 5 Dak. 244, 249, 38 N. W. 440; *Phillips v. State,* 9 Humph. 246; *Hill v. State,* 5 Lea, 725; *Welsh v. State,* 60 Neb. 101, 82 N. W. 368; *People v. Gage,* 62 Mich. 271, 28 N. W. 835; *People v. Glover,* 71 Mich. 303, 38 N. W. 874; *People v. Bernor,* 115 Mich. 692, 74 N. W. 184; *State v. Byrne,* 47 Conn. 465. In the Connecticut and Michigan cases cited it was held that a considerable delay in making such complaint did not bar the admission of such testimony, but that the delay simply went to the weight to be given to such evidence. The Connecticut case cited goes to the extreme length of holding that the evidence of such complaint having been made is not limited to the mere fact of the prosecutrix "having made such statement, but may extend to the particulars of it." We find no reversible error in such ruling of the trial court in the case at bar.

11. For similar reasons we perceive no valid objection to the evidence of Ida's physical condition the next day after the alleged rape, and at the hearing before the justice, includ-

ing the testimony of the physician who made a special examination, to the effect that "she looked pale and nervous, and even trembled"; and that when she put her tongue out it shook like a leaf, showing that her nervous system was, for some cause, disturbed.

12. We perceive no error in admitting testimony that a witness for the accused had made statements out of court contrary to his testimony in court, after the foundation therefor had been laid by putting the proper questions to him; nor in the excluding of such impeaching testimony of witnesses on the part of the state, where no such foundation had been laid. The questions raised by counsel for the accused are very numerous. We have considerd all of them, and discussed all which seem to merit discussion. We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.

The plaintiff in error moved for a rehearing, and the following opinion was filed October 21, 1902:

BARDEEN, J. The motion for a rehearing raises a question not discussed in the former opinion, and but barely alluded to in the printed argument of counsel. It is not surprising that, in the great multitude of objections raised and argued by the plaintiff in error, this should have been passed over in silence. The mistake in the printed record left the objection pointless, and for that reason it did not receive that consideration its importance deserved. The point now brought definitely and clearly to our consideration is the rejection of certain evidence offered by the plaintiff in error relative to the conduct of the prosecutrix toward him a short time before the alleged assault occurred. It related particularly to the previous relations of the parties. The offer of testimony was somewhat indefinite, but in the colloquy between the court and the counsel sufficient appears to indicate that the latter's purpose

was to show the previous relations existing between the accused and the prosecutrix. In ruling upon the offer the court effectually cut off any inquiry in that direction. He informed counsel that: "No matter what was done at that time. It hasn't anything to do with this case, unless you propose to produce proof that this girl was a common prostitute." Counsel disclaimed any such intention, and all testimony on that point was excluded. This was error, and of such serious a character as to require a reversal of the judgment. The plaintiff in error had a clear right to show, if he could, that the relations existing between him and the prosecutrix were of a friendly character; that her conduct toward him was of such a nature as to invite advances on his part; and this although such evidence would have no tendency to show that improper relations existed between them, or that her general character or reputation was bad. If their relations were in fact friendly,—if the girl's conduct was such as to invite friendly advances on his part,—the jury might conclude that he intended to accomplish his purpose by peaceable and persuasive measures, rather than by the exercise of force. The girl testified to the fact of forcible intercourse. The jury negatived that fact by finding the accused guilty of assault with intent to commit rape, only. The question of intent, therefore, became a matter of prime importance in the case. His conduct toward her was certainly blameworthy in the highest degree, but considering the case on the theory adopted by the jury, that actual intercourse did not take place, there was ground for them to say that he did not intend to force her to consent to his purpose against her will. The testimony offered would have a direct bearing upon that intent. The previous relations of the parties may always be shown, as evidence tending to show the probability or improbability of the commission of such an offense. *People v. Jenness,* 5 Mich. 305. Other cases directly in point to the question under discussion are *Hall v. People,* 47 Mich. 636, 11 N. W. 414, and

*Shirwin v. People,* 69 Ill. 55. · The error mentioned is so palpable that we have concluded that a reargument of the question would be unprofitable.

The former judgment of this court is therefore vacated, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

*By the Court.*—So ordered.