PATRICK WELSH v. STATE OF NEBRASKA.

FILED APRIL 4, 1900.   No. 11,028.

1. **Change of Venue:** CONTINUANCE: DISCRETION OF COURT.   Application for change of venue, or a continuance is addressed to the sound discretion of the court; and its ruling thereon will not be disturbed, where no abuse of discretion is disclosed.

2. **Code of Civil Procedure:** SPECIAL TERM: SUMMONING JURORS.   Whenever at any general or special term of the district court,

for any cause, there is no panel of petit jurors, the court may, under section 664 of the Code of Civil Procedure, direct the sheriff to summon persons having the qualifications of jurors to appear and serve as petit jurors.

3. **Rape: COMPLAINT OF PROSECUTRIX.** In a prosecution for rape it is competent for the state to prove that the prosecutrix made complaint of the injury to others immediately after the commission of the alleged offense.

4. **Examination of Witnesses: DISCRETION OF COURT.** The allowing of leading questions to be put to a witness rests in the sound discretion of the court.

5. **Instruction: NO ERROR.** It is not error to assume in an instruction the existence of a collateral fact established by uncontroverted evidence and which tends to prove one of the constituent elements of a crime.

6. ————: **PHYSICAL CONDITION OF PROSECUTRIX.** In a prosecution for rape, it is not reversible error to inform the jury that they are at liberty to take into consideration the physical condition of the prosecutrix at the time of the alleged assault, in arriving at their verdict.

7. **Impeachment of Verdict: AFFIDAVIT OF JURORS.** The affidavit of jurors relating to the arguments or statements made by them while deliberating upon their verdict may not be received to impeach the verdict.

ERROR to the district court for Holt county. Tried below before WESTOVER, J. *Affirmed.*

*N. D. Jackson,* for plaintiff in error, argued as to change of venue that the constitution guarantees to every person accused of crime an impartial trial, and our legislature has provided a way, when a community has become aroused and strong prejudice created against one so accused, for such a trial in an unprejudiced community. There is no rule better settled than the one that when the public sentiment of a whole community is aroused its effect upon a jury is to prevent a calm and dispassionate inquiry into the merits of the controversy; such is the rule in this state. *Richmond v. State,* 16 Nebr., 391.

As to special venire: To give effect to the provision of our law, which permits the calling of a special term of

court, and requires the judge to direct whether a jury shall be summoned, requires the order to be made at least fifteen days before the first day of the session, because a jury can only be drawn for the special term in the same manner as for the regular term. *McElvoy v. State*, 9 Nebr., 157.

As to statements of prosecutrix, counsel cited *Prince v. Samo*, 7 Ad. & El. [Eng.], 627.

As to instructions, the court, in its charge, assumed absolutely that Mrs. Yonke had recently given birth to a child. It is true that Mrs. Yonke had testified to having given birth to a child about five weeks previous to the time of the alleged assault, but the jury were at liberty to disbelieve the witness, and to find that portion of the testimony untrue. The court can not assume, in the trial of a criminal case, any fact to have been proven, even where there is no conflict in the testimony. *Heldt v. State*, 20 Nebr., 499.

The rule is well settled in this state that in charging a jury undue prominence should not be given to one branch or item of evidence by particular mention to the disparagement of the rest. *Markel v. Moudy*, 11 Nebr., 213.

*R. R. Dickson*, also for plaintiff in error.

*Constantine J. Smyth, Attorney General*, and *Willis D. Oldham, Deputy*, for the state.

The case of *McElvoy v. State*, 9 Nebr., 157, and *Clark v. Saline County*, 9 Nebr., 516, are the leading cases relied upon by counsel for the prisoner in support of the alleged error in overruling the motion to quash the panel of jurors. The court by an examination of *McElvoy v. State, supra*, will notice that the language of the learned justice who rendered that opinion, both in the syllabus of the case and in the opinion itself, was pure dicta. That the question was not before the court for determination under the rules of the practice in the supreme court, and that the conclusion reached in that case was not based

on that assignment of error at all, and, consequently the
obiter thesis of the learned justice who wrote the opin-
ion, which tended to transform this molehill of a tech-
nicality into a majestic mountain of statutory right, is
not a binding precedent for this court to follow. *Clark
v. Saline County, supra,* is but a repetition of these same
obiter suggestions of the same jurist. In *Barton v. State,*
12 Nebr., 260, 265, also relied upon by counsel for the pris-
oner, the decision was adverse to the state because the
public prosecutor demurred to the plea in abatement,
and thereby admitted the truth of the allegations con-
tained in said plea. This plea was held by Judge COBB,
who wrote the opinion, to "contain all of the necessary
allegations of a good plea in abatement, under a rea-
sonably liberal construction," but also that it sufficiently
negatives the suggestion, that possibly the grand jury
that found the indictment was procured under the pro-
visions of section 664." And further on in that opinion
the judge says, "If it were true that the grand jury in
question was in fact summoned under the extraordinary
provisions of section 664, then we think that it was the
duty of the district attorney under the provisions of sec-
tion 446, of chapter 42, of the Criminal Code, to have
replied to the said plea setting up such fact, rather than
to have demurred generally, as he did, thereby admit-
ting the facts of the plea if well pleaded."

The cause was argued orally by *N. D. Jackson,* for the
plaintiff, and by *Willis D. Oldham,* for the state.

*Jackson,* for the prisoner, argued that upon the record
it was apparent that the prisoner could not have a fair
trial in Holt county, citing *Richmond v. State,* 16 Nebr.,
391.

*Oldham* said that the case of *Richmond v. State* was a
judicial maverick. No one could interpret its meaning.
By and by some court would lariat it, and place a judi-
cial brand upon it. God speed the day! Some people
thought that a change of venue was one of the inaliena-

ble rights guaranteed by *Magna Charta*. It was nothing of the kind. It was a part of the procedure in a criminal trial controlled by the *nisi prius* court. That court is only answerable for an abuse of discretion. Holt county was larger than the whole state of Rhode Island. The just indignation of a few settlers in the immediate neighborhood of the outrage argued nothing for a widespread prejudice. *Oldham* read from the affidavit of Frank Campbell, in the record.

NORVAL, C. J.

The defendant, Patrick Welsh, was tried in the district court of Holt county on an information charging him with having, on the night of August 23, 1899, committed the crime of rape on one Katie Yonke; and from the judgment of conviction comes to this court on error. The crime was a most revolting one. We do not deem it necessary to enter into a detailed statement of the facts, but shall confine ourselves to the questions of law urged by defendant as grounds for reversal. No regular term of the district court was to be held in Holt county for some time after the offense was committed, so, at the request of numerous citizens of the county, the Hon. M. P. Kinkaid, one of the judges of the judicial district, called a special term of court for that county, to be held on the 5th day of September, 1899, for the trial of criminal cases in which felonies were charged, and for the hearing and disposition of *ex parte* matters in civil causes. By this order he also directed the clerk of the court to issue a venire to the sheriff requiring him to select and notify to appear and serve as petit jurors at said term, twenty-four men from the body of Holt county, having the qualifications of jurors, to appear on September 7th, 1899. No jury was drawn on this order, and no regular panel had been selected, so, when the court met, no jury was in existence or appeared. The court met pursuant to this order, whereupon defendant filed a motion for a change of venue, on the ground of local prejudice and

bias, which motion was supported by affidavits. These were met by a counter showing of the state. This motion was overruled, and a trial was held in Holt county. After this motion was denied, the presiding judge was called away from the county on some urgency, and the Hon. W. H. Westover, another judge of the same judicial district, took his place upon the bench, and conducted the further proceedings in the case. There was submitted to the court an application of the defendant for a continuance of the cause until the next regular term of court to be held in the county, which motion was denied and an exception to the ruling entered. Thereupon, on September 13th Judge Westover issued an order to the sheriff, reciting, substantially, that the court was in session, that there was no jury present, none having been drawn or summoned; and directing the sheriff to summon twenty-four good and lawful men having the qualifications of jurors to appear before said court on September 19th, 1899, to serve as petit jurors at said special term. Pursuant to said order, the sheriff duly summoned twenty-four persons as jurors, who duly appeared, and from this panel was selected the jury which tried and convicted the defendant. Before trial, defendant filed his motion asking the court to quash the panel, upon the following grounds:

1, Because the jury was not selected and drawn in the manner provided by law;

2, Because the persons summoned to serve as jurors were not persons whose names were selected by the board of county supervisors of Holt county as required by law;

3, Because the persons summoned to serve as jurors were not persons whose names were drawn by lot by the clerk of the district court, or his deputy, by the sheriff or his deputy, or by the coroner or by either of such officers out of the box or receptacle as required by law;

4, Because the persons summoned to serve as such jurors have appeared solely at the request of the sheriff

of said county and are not persons whose names are contained in any order issued by the clerk of the district court of said county commanding the sheriff to summon the persons therein named to serve as jurors;

5, Because no jury has been selected, drawn and summoned for attendance at this term of court;

6, Because the jury in attendance at this term of court is not drawn from the body of the county, nor does such jury contain a proportionate number from each precinct in the county.

This motion was overruled by the court, and an exception noted.

On the rulings of the court on the motions for change of venue, for continuance and to quash the panel, defendant predicates error, as also on rulings of the court in the introduction of evidence, in the giving of one instruction, and on alleged misconduct on the part of certain members of the jury while deliberating on the verdict. These alleged errors will be considered in their order, at such length as the court deems important.

Defendant, in support of his motion for a change of venue, filed numerous affidavits of persons residing in the town of O'Neill and in various other parts of the county; also, copies of the different newspapers published in said county. From these affidavits it would appear that a considerable degree of excitement over the alleged crime existed in the county, particularly at and in the vicinity of the county seat, O'Neill. Many of the affiants testified that they had heard threats of personal violence to the defendant on the part of residents of O'Neill; also, expressions of opinion that defendant was guilty of the crime charged against him, and a desire that he be convicted of it and punished to the full extent of the law; that there was an extreme degree of bias, hatred and prejudice against defendant by many of the residents of the county, and particularly in O'Neill and vicinity. The articles introduced from the newspapers, generally condemned the crime very strongly, some of them stating very pointedly the belief on the part of the

writers that the defendant was guilty of the crime and should be punished with severity. This evidence was traversed by the state, as will hereinafter more fully appear.

It is insisted by defendant's counsel that this case falls within the rule established by this court in *Richmond v. State*, 16 Nebr., 388, wherein, on affidavits filed by defendant, it was held that the trial court abused its discretion in refusing defendant's motion for a change of venue. In that case, numerous affidavits were filed from which it appeared that there was an intense feeling of bias against the accused in the town, which contained about one-fourth of the population of the county wherein the alleged crime was committed, and that, by reason of such intensity of bias, he could not obtain a fair and impartial trial in that county. In that case the state also made a counter-showing on affidavits, none of its witnesses, however, denying that there was a strong prejudice against the defendant, although many of them gave as their opinion that there was not such a feeling against him as to preclude a fair trial being had; nor could it be inferred that many of the affiants testifying for the state had as favorable opportunities to form correct estimates of public opinion as had those who made affidavits filed on behalf of defendant. On such showing, this court held that there was an abuse of discretion by the trial court and awarded a new trial.

In the case at bar the state introduced affidavits of numerous persons who seem to have had ample opportunities to ascertain, and who apparently did investigate and ascertain the public feeling both in O'Neill and in Holt county generally, relative to defendant and the crime charged against him. From them, it appears that Holt county contains an area greater than that of the state of Rhode Island, that the population thereof is near 20,000, while that of O'Neill is only about 1,200, and the total population of towns in said county being only 3,500, the remainder of the population of the county being an

agricultural one widely scattered; that very few persons who reside outside of the towns were acquainted with the case, or seemed to have any feeling in regard to the matter, such as would result in prejudice to the defendant. While many of these affiants admit that a few people in and about O'Neill may have been prejudiced against defendant, they deny that this feeling could be attributable to any large portion of the populace of the town or its vicinity, or of the county, but that the feeling of the people generally was, at the time the motion was heard, that the law should take its due course, and he be accorded a fair and impartial trial. It was also testified that while some of the residents of the town and the county were doubtless prejudiced against him, others were friendly to him; but that the general feeling was, as we have said before, that a fair and impartial trial should and could be had upon its merits. If these affidavits were true—and the lower court was judge of their truthfulness, and of the weight to be given to the evidence of those who testified—it is clear that there was ample evidence on which to base the conclusion that a very healthy condition of public opinion existed in Holt county and in O'Neill at that time, touching the administration of justice in this particular case, and that the defendant could have a fair and impartial trial, notwithstanding a small portion of the community might be prejudiced against him as an individual. It would be a sad reflection upon public opinion and the moral tone of that county, should it have been possible that a crime of the heineous character of the one charged against defendant could have been committed within its boundaries without having resulted in an almost unanimous condemnation thereof, and a desire on the part of all good citizens that its perpetrators should receive speedy justice at the hands of the courts. Nor would it be anomalous should a portion of the populace have conceived and expressed a strong prejudice and bias against the alleged criminal, particularly should the evidence be con-

vincing and clear, as appeared to be the fact in this case. But such prejudice must be so general as to convince a court that a defendant can not have a fair and impartial trial in the county where the crime is alleged to have been committed, before it is justified in ordering a change of venue.   In this case the lower court had ample evidence from which to reach the conclusion that no such bias, prejudice or hatred against the defendant existed in the community as would preclude him from having a fair and impartial trial, and as an application for change of venue is addressed to the sound discretion of the court (*Smith v. State*, 4 Nebr., 277), we can not say that there was such an abuse of discretion as to call for a reversal of the sentence.

It is urged that while the evidence as to bias, hatred and prejudice may have been traversed by the state, the evidence of defendant's witnesses relative to threats of personal violence were not denied by the affidavits filed by the state.   But we think otherwise.   There was adduced evidence to the effect that, although there was a strong feeling by part of the community against defendant when he was arrested, the witnesses stated that at the time of the hearing of the motion such prejudice had died out; and also that the feeling against defendant existed on the part of a few only of the inhabitants of the county.   From evidence of this class the court was certainly justified in believing that, although there may have been threats of personal violence, the number of those holding such views was so small, as compared with those of the great body of law-abiding citizens, as not to create a sentiment against defendant, such as would preclude him from having a fair trial in that county, particularly when no attempt of personal violence was shown to have been made.   While the constitutional right of a person accused of crime to a fair trial should always be jealously guarded by the courts, it is also their duty to the state to insist that persons accused of crime should have a speedy trial, in order that the de-

mands of justice shall not be deferred until the prosecution becomes worn out by needless delays and the ends of justice be thus defeated. In this case we are persuaded the lower court should be sustained in its promptness of action, rather than condemned therefor, for the record is convincing that the defendant had a fair and impartial trial, on the part of both court and jury, and received nothing but justice at their hands. The decision on the motion for the postponement of the trial until the next regular term of court, requires no extended comment. The motion was based upon the same facts as presented by the application for a change of venue, and the foregoing discussion is applicable to the assignment of error directed against the refusing of a continuance. The ruling is not prejudicially erroneous.

It is next urged by defendant that the jury was not a legal one, because it was not drawn according to the provisions and requirements of law. It is evident that the court obtained its authority to order the panel from section 664 of the Code of Civil Procedure, no jury having been drawn as provided by sections 658, 659 and 660 of said code. Said section 664 is applicable to juries drawn in criminal cases, as will appear from the decisions of this court hereinafter cited. The term of court at which accused was convicted, though a special one, was legal, for the district judge has power, under section 25, chapter 19, Compiled Statutes, 1897, to call special terms of court for the transaction of any business he may deem necessary. This power is doubtless conferred upon judges for the purpose, among others, of expediting trials in criminal cases of persons who are incarcerated and unable to give bail, as well as for the purpose of rendering speedy justice in all cases. Doubtless it would have been better had the judge directed that the jury be summoned in the manner prescribed by section 658 et seq. of the Code of Civil Procedure, but the omission so to do did not have the effect to invalidate the term of court. The term being legal, and there being no

jury present, because of such failure of the judge to direct the drawing and summoning of one in the regular manner, the court had power under said section 664 to call a jury through an order to the sheriff directing him to summon one, as was done in this case, for the section says, "whenever at any general or special term, * * * for any cause there is no panel of grand jurors or petit jurors or the panel is not complete, said court may order the sheriff, deputy sheriff, or coroner to summon without delay good and lawful men, having the qualifications of jurors," etc. This court has frequently held this section to be applicable to criminal as well as to civil cases. *Dodge v. People*, 4 Nebr., 220; *State v. Page*, 12 Nebr., 386; *Pflueger v. State*, 46 Nebr., 493; *Barney v. State*, 49 Nebr., 515; also that it should be construed in connection with section 465a of the Code of Criminal Procedure. *Barney v. State, supra.* We are therefore of the opinion that the order of the court directing the sheriff to summon from the body of the county a jury, there being no regular panel at the time, was valid, under said section 664. The authority conferred by this section should be sparingly exercised and exigencies should not be purposely created by the courts for its exercise. This defendant suffered no injustice through such proceeding, and the lower court must be sustained in its action. In cases where a jury is drawn in the manner prescribed by said section 658 et seq. of the Code of Civil Procedure the provisions thereof must be observed. That they are mandatory we do not doubt, particularly those provisions which require that the panel must consist of persons drawn, as nearly as may be from all portions of the county, in proportion to their population, and this we understand to be the rule laid down in most of the cases of this court cited by counsel for defendant in support of the proposition that the panel in this case was illegal. But no such requirement is prescribed by section 664, hence it was unnecessary that the jury in this case be so selected. There is no conflict in

these various provisions of the Code, but their exercise depends upon circumstances. The only case cited by counsel for defendant to which we deem it advisable to advert directly is that of *McElvoy v. State*, 9 Nebr., 157. We do not regard that case as in point here. The observation of the learned judge who wrote the opinion in that case on the point in controversy here is clearly dictum, for the reason that it was held that defendant had waived his right to question the regularity of the manner in which the panel was drawn. The case was reversed solely upon another point. All of the observations of the court as to the manner in which the jury was drawn are clearly outside the issue in the case, as it came here, and are not a proper construction of the section of the Code therein mentioned. We are clearly of the opinion that in this case such an exigency existed as authorized the lower court to call a jury under the provisions of section 664, and that the panel was valid.

Upon the trial, the state was permitted to prove that the prosecutrix, the morning after the commission of the alleged offense, informed Mr. and Mrs. Jantice of the alleged assault upon her, and that the same was made by the defendant and one Michael Begley. This testimony was proper as tending to corroborate the prosecutrix. *State v. Meyers*, 46 Nebr., 152; *Oleson v. State*, 11 Nebr., 276. The form of the questions by which this testimony was elicited, was objectionable as being leading. But the matter of allowing interrogations of a leading character, to be put to witness, rests in the sound discretion of the trial court; and a clear abuse of such discretion must exist to work a reversal of a cause. No prejudice to the accused is perceived in permitting leading questions to be put and answered.

We have carefully and critically examined other rulings of the lower court in the introduction of evidence complained of by the defendant, and without adverting to them at length, fail to find any errors therein prejudicial to defendant, and such as would justify this court in granting a new trial.

Objections are made to the following instructions to the jury:

"The charge made against the defendant is, in its nature, a most heinous one, and well calculated to create strong prejudice against the accused; and the attention of the jury is directed to the difficulty growing out of the nature of the usual circumstances connected with the commission of such a crime in defending against the accusation of rape.

"It is your duty to carefully consider all the evidence in the case, and the law as given you by the court, in arriving at what your verdict shall be in this case. You must find on the part of the woman, not merely a passive policy of equivocal submission to the defendant. Such resistance will not do. Voluntary submission on the part of the woman, while she has power to resist, no matter how reluctantly yielded, removes from the act an essential element of the crime of rape.

"If the carnal knowledge was with the voluntary consent of the woman no matter how tardily given, or how much force had theretofore been employed, it is not rape, and in determining whether she did resist to the extent of her ability in this case, you may take into consideration her physical condition at the time of the alleged rape, and the further fact that she had but recently given birth to a child."

It is strenuously insisted that the foregoing was erroneous in that the instruction assumed that the prosecutrix had but recently given birth to a child. This criticism we are unable to sustain. The undisputed evidence adduced on the trial was that Mrs. Yonke, the complaining witness in the case, had given birth to a child not over five weeks prior to the alleged assault. Therefore the paragraph in the charge of the court did not, in the particular suggested, assume a fact not established by the proofs. But it is said that in a criminal cause the court can not assume any fact proven, even when established by uncontroverted testimony. This principle was

Welsh v. State.

broadly laid down in *Heldt v. State*, 20 Nebr., 492. But the statement was a mere dictum and entirely outside of that case. A court may not in an instruction assume a constituent element of a crime as proven; but it may assume the existence of a collateral fact in a criminal case established by uncontroverted evidence. *Debney v. State*, 45 Nebr., 856. The fact that the prosecutrix had recently been delivered of a child, was not a constituent element of the crime of rape, but was a collateral fact merely bearing upon the issue whether one of the elements of the offense charged against the accused had been proven. It was shown by the evidence that the prosecutrix was physically weak, at the time of the alleged assault, and it was not out of place to direct the jury that they might take that fact in consideration in forming, or arriving at their verdict. This was proper. *Richards v. State*, 36 Nebr., 17; *Thompson v. State*, 44 Nebr., 366. The reference in the instruction to the physical condition of Mrs. Yonke, did not give undue prominence to one branch or item of evidence to the exclusion of others. The instruction as a whole was most favorable to the accused.

It is further urged that the verdict is not supported by the evidence, but was the result of the passion and prejudice of the jury and the community where the case was tried. An examination of the evidence is convincing that the objection is without merit, if not frivolous.

It is finally insisted that the judgment should be reversed on account of misconduct of the jury while deliberating upon their verdict. By affidavits of some of the jurors it appears that while considering their verdict certain of them suggested that the accused should be convicted because Michael Begley had been found guilty, it having been shown that Begley and the defendant both ravished the prosecutrix. The testimony of the jurors in the matter just indicated, is incompetent to impeach their verdict. No reversible error appearing in the record, the judgment is

AFFIRMED.