## WILLIAM J. AINLAY V. STATE OF NEBRASKA.

### FILED JUNE 26, 1911.   No. 17,002.

1. Criminal Law: ADMISSION OF EVIDENCE: HARMLESS ERROR. "The
   reception of incompetent evidence tending to establish a certain
   fact is not prejudicial error when the same fact is conclusively
   established by competent evidence." *Fike v. Ott,* 76 Neb. 439.

2. ———: WITNESSES: EXAMINATION: DISCRETION OF COURT. "How far,
   if at all, á party shall be permitted to cross-examine, or put lead-
   ing questions· to his own witnesses, where they appear to be
   hostile or unwilling, is in the discretion of the trial court, and
   its rulings in such matters will not be disturbed except for mani-
   fest abuse of discretion." *Hackney v. Raymond Bros. Clarke
   Co.,* 68 Neb. 624.

3. ———: EVIDENCE. In a prosecution for gambling, where the case
   for the state rests largely upon the testimony of witnesses who
   have been guilty of a like offense, and the court properly in-
   structs the jury as to the weight to be given the testimony of
   such witnesses, and the testimony given by such witnesses is
   sufficient to sustain the verdict of the jury rendered thereon, the
   verdict will not ordinarily be disturbed in this court, even though
   such testimony be contradicted by the accused.

ERROR to the district court for Gosper county: ROBERT
C. ORR, JUDGE. *Affirmed.*

*E. T. Grunden* and *Ritchie & Wolff,* for plaintiff in
error.

*Grant G. Martin, Attorney General,* and *Frank E.
Edgerton, contra.*

FAWCETT, J.

Defendant was convicted in the district court for
Gosper county of the crime of gambling, and sentenced
to pay a fine of $150 and costs of prosecution, from which
he prosecutes error to this court.

The giving of instruction No. 7 is assigned as error
upon the ground that "there is absolutely no evidence to
justify, or even excuse, submitting such an issue." By

49

this instruction. the jury were told: "If you find from the evidence in this case that the defendant has endeavored to prevail upon any witness to abscond, or has procured his absence, or has endeavored to induce him to testify falsely, or has concealed the whereabouts of such witness from the prosecution, such conduct on the part of the defendant is an incriminating circumstance to be weighed by the jury in determining the question of his guilt." Plaintiff was accused of gambling in the house of John Collier. Collier was himself arrested for keeping a gambling house, pleaded guilty and paid a fine. Immediately thereafter, and while a warrant was out for defendant, Collier and his son, Walter, suddenly left Elwood. The county attorney had a subpœna issued for them, but it was returned unexecuted. The evidence of young Collier shows that he and his father went first to Holdrege, where they saw defendant, and then to the town of Funk, arriving there shortly before noon. They put up at the hotel, where they had dinner, supper and lodging. In the morning they were advised that they were wanted at the telephone. Young Collier answered the call. He testified that the substance of the call was that they "had better come back to Holdrege," because the party thought they "would be subpœnaed on the case." The testimony of the father and of the hotel-keeper is that the two Colliers left before breakfast. They started on foot and walked about four miles, when they were met by defendant in a buggy, who took them to Holdrege and to his home, where they remained that day and night, and then went to the town of Wilcox, where they remained from one to two days, and then returned to Holdrege. When asked why they went to Wilcox, young Collier answered, "Because we wanted to go there." No other reason is given for their trip to Holdrege, Funk or Wilcox. When asked if he was surprised when defendant met him with the buggy, he answered: "No." "Q. So you were expecting to see him, were you? A. Yes, sir. Q. He told you that he would meet you with a

team, didn't he?   A. I think it was stated that he would."
When they got back to Holdrege from Wilcox, they
learned that defendant's preliminary examination was
over, and they then returned to Elwood.   We think this
evidence was ample to warrant the giving of instruction
No. 7.   Counsel objects to this instruction for the further
reason that the court told the jury that such conduct on
the part of the defendant "is an incriminating circum-
stance to be weighed by the jury in determining the ques-
tion of his guilt."   It is argued that this submitted only
the question of defendant's guilt, and not that of his
guilt or innocence.   In other words, that the words "or
innocence" should have been added.   We think this criti-
cism is without merit.   The words "in determining the
question of his guilt" are tantamount to saying "in de-
termining the question as to whether or not he is guilty."

It is further urged that the court erred in permitting
the county attorney, while upon the stand as a witness,
to testify that he went to the telephone office in Elwood
and examined the record of calls from Elwood to defend-
ant at Holdrege on the afternoon of February 20, the day
the Colliers first reached Holdrege, and that the book in
the telephone office for that date showed a call to defend-
ant at Holdrege from one McDonald, who it is claimed
participated with defendant in the poker game for which
defendant was being prosecuted.   We think this evidence
was improperly received, but its admission was not error,
for the reason that this same matter had already been
properly shown by the operator in charge of the telephone
office on that day.   *Fike v. Ott,* 76 Neb. 439.

Instruction No. 5 is objected to for the reason that it
submitted the issue that "defendant did unlawfully play
a game of cards for   *   *   *   other property of value."
It is urged that this is wholly unsupported by evidence;
that this instruction permitted finding defendant guilty
of playing with any person; that its first paragraph reads,
"Milton Winslow *or* other persons," while the information
charges him with playing with "Milton Winslow *and*

with others to affiant unknown." This contention is not worthy of serious consideration.

The trial court is severely arraigned by counsel, who states in his brief: "The action of the court at 1489 in intimidating the witness and conveying to the jury his desire that they convict." The witness upon the stand was troubled with a very defective memory. To nearly every question asked him he answered that he couldn't remember. The record shows: "Q. Did you play poker during that time—the year 1908—or any other card game for money with Mr. Milton Winslow or William J. Ainlay? A. Not that I remember of. Q. Did you or did you not? A. I can't recollect. I don't remember. Q. I want an answer to that question, one way or the other. (Witness hesitates.) 1489. The Court: I want you to answer that question. You may take all of the time you want to think it up." This is the language used by the court which causes counsel to say that the court was trying to intimidate the witness and to convey to the jury his desire that they convict. The action of the court at 1491 and 1492 is also assailed. After the court had told the witness at 1489 that it wanted him to answer the question, but that he might take all the time he wanted to think it up, the record proceeds: "Well, I can't remember. 1490. That is not the answer. Will you say that you did or did not in Collier's place or house in Elwood, Nebraska, during the year of 1908, play cards or a game of poker or any other game for money with Milt Winslow or William Ainlay? Now, answer that question by yes or no." This was objected to, when the court said: "Now, I want you to answer that question." Counsel excepted to this statement of the court. By the witness: "Well, I can't answer it by yes or no, because I don't remember. Q. I insist on getting an answer to that question before he leaves the witness-stand. The Court: Have you any further answer to make to that question?" He was then asked by counsel for the state to say yes or no, when he answered: "I can't when I don't know."

This closed the incident. It is trifling to urge that the court was guilty of any misconduct in what we have just narrated.

In attempting to make out the case for the state, counsel was obliged to rely upon witnesses friendly to defendant, and who, the evidence fairly indicates, were in the habit of engaging in "games" themselves, and in the course of their examination he subjected them to what would ordinarily be termed quite rigid cross-examination. This is strenuously objected to; but under the peculiar conditions surrounding this case we do not think the court abused its discretion in that regard. The question as to how far, if at all, a party shall be permitted to cross-examine or put leading questions to his own witnesses where they appear to be hostile or unwilling is in the discretion of the trial court, and its rulings in such matters will not be disturbed except for manifest abuse of discretion. *Hackney v. Raymond Bros. Clarke Co.*, 68 Neb. 624; *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb. 448; *Welsh v. State*, 60 Neb. 101.

The petition in error contains over 800 other assignments of error, which time forbids considering in detail. Suffice it to say that we have carefully read the entire record and the briefs of counsel, and are unable to discover any reversible error in the rulings of the court upon the trial.

Finally, it is urged that the verdict is not sustained by the evidence. The conviction in this case rests quite largely upon the testimony of one Harry Sugdon, who admitted that he had been arrested for running a gambling room, and that the county attorney had promised him that, if he would testify in this case against the defendant, he would not be fined or imprisoned. Defendant positively denied the testimony of Sugdon, but the latter is corroborated to a considerable extent by other witnesses in the case, as well as by the action of defendant in aiding the Colliers to keep away from Elwood until after the preliminary examination. In charging the

jury, the court properly advised them as to the weight to be given to the testimony of the witness Sugdon, in the light of the admissions made by him as above outlined; and also carefully advised them as to the weight of the testimony of any witness who claimed to have played for money with the defendant. The jury, with these matters fully explained to them, found the defendant guilty, and we are unable to say from the record before us that their verdict is not sustained by sufficient evidence.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.