MICHAEL EGAN, SR., v. STATE OF NEBRASKA.

FILED FEBRUARY 12, 1915.  No. 18,699.

1. **Indictment:** RECEIVING STOLEN GOODS: DUPLICITY. The statute provides that an indictment for larceny of personal property may also contain a count for receiving or for concealing the same. Rev. St. 1913, sec. 9057.

2. ———: ———: ———. In a prosecution for receiving stolen property, it is necessary to allege and prove that the defendant knew that the property was stolen. Evidence that he participated in the larceny is competent for that purpose. The conviction will not be reversed because the defendant is also charged with the larceny.

3. **Criminal Law:** VENUE. Receiving property in this state, knowing it to be stolen and with intent to defraud the owner, may be prosecuted in this state, although it was stolen in a foreign state.

4. ———: MISCONDUCT OF JURY: SHOWING. The district court did not err in refusing to order a juror to appear and make affidavits of matters occurring in the jury room which would not amount to

such misconduct of the jury as to require the court to set aside the verdict.

5. **Receiving Stolen Goods: PROOF.** In a prosecution for receiving stolen property, it must be alleged and proved that the defendant received the property, knowing it to have been stolen and with intent to defraud the owner thereof.

6. **Criminal Law: EVIDENCE: BOOK ACCOUNT.** A memorandum of items of money paid by the witness is not competent in evidence as a book account.

ERROR to the district court for Dawes county: WILLIAM. H. WESTOVER, JUDGE. *Reversed.*

*J. J. Harrington, M. F. Harrington* and *Lee Card,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

SEDGWICK, J.

This defendant was convicted in the district court for Dawes county of the crime of receiving stolen property, and has brought the case here for review by petition in error.

1. The information contains three counts. The first count charged that the defendant and his son John Egan, in the county of Dawes, state of Nebraska, did unlawfully and feloniously steal, take and carry away one mare, the personal property of one William Hanna. The second count charged the same defendants with receiving the stolen property, knowing that it was stolen, with intent to defraud the owner. And the third count charged the same defendants with concealing the same property. The jury found the defendant John Egan not guilty. The evidence shows that the property was in South Dakota, and, if it was stolen, was stolen in that state.

The defendant insists that the prosecution knew before the complaint was made that the animal was kept in South Dakota, and that, if stolen, it must have been stolen in South Dakota, and that therefore the defendants could not be convicted upon the first count of the information; that

the whole object in charging these defendants with steal-
ing the property was to prejudice the jury against them in
the other counts of the information; that the defendant
was prejudiced thereby, and therefore has not had a fair
trial.    This contention is very earnestly presented and
elaborately argued in the brief.   It is said in the brief: "A
man may be charged with larceny, and some of the jurors
may believe him guilty of larceny and others not guilty,
and, if the prosecution be confined to the one count, it
would result in a disagreement or an acquittal.   But you
join with it a count for receiving the same property, know-
ing it to be stolen, and some of those who would acquit him
of larceny may believe him guilty of receiving stolen prop-
erty.   You charge him in another count with concealing
stolen property, and some of those who would acquit him
both of larceny and of receiving stolen property with in-
tent to defraud the owner will believe that he concealed
the stolen property, knowing it to be stolen.    In other
words, he has to meet and defend three charges and not
one, and he has to take his chances of an acquittal as
against men some of whom believe him guilty of one count
and innocent on another.   The result is that the state has
a tremendous advantage, because those who may believe
him guilty on one count would not be able to convict him.
But you get enough men believing him guilty on one count,
and some more guilty on another count, and some more on
still another count, and the end is a conviction by com-
promise of some kind."   This is putting it pretty strong,
and there may be some ground for such reasoning, but the
same reasoning would apply to any and all cases in which
there are more than two counts in an information, and we
are not prepared to hold that the prosecutor cannot join
different counts in an information.

It is said that there is no evidence in the case tending
to show that the property was stolen in this state, and that
a charge that it was so stolen was made for the purpose
of allowing the prosecution to bring matters into the case
for the purpose of prejudicing the defendant, and that such
practice ought not to be allowed.   In a prosecution for re-

ceiving stolen property, it is necessary to allege and prove
the name of the owner of the property, if known, and that
the defendant knew that the property was stolen and re-
ceived it with the intention of defrauding the owner. It
would seem that, without the count charging the defendant
with having stolen the property, evidence that he did in
fact steal the property might be competent as tending to
show that he knew that it was stolen, and so, if the prop-
erty had been stolen in a foreign country, evidence tending
to show that the defendant participated in the larceny
would of course show that he knew the property to be
stolen, a necessary element to be proved.

It appears that the defendant and his sons owned and
were using several tracts of land, all near the state line,
some of them in the state of South Dakota and some in
this state, and that Mr. Hanna received this animal from
one of the defendant's sons some time in March, 1913. The
animal was kept on Mr. Hanna's ranch, which adjoined the
ranch of the defendant's son, and was situated in the state
of South Dakota, near the state line. The animal was al-
lowed to run upon the range and might have been in either
state when stolen. We cannot see that the bitter charges
of fraud against the prosecution are very substantially sus-
tained. Our statute makes larceny and receiving stolen
property and concealing stolen property three distinct of-
fenses. It has been held that stealing property in another
state is not a crime that can be prosecuted in this state.
*Van Buren v. State,* 65 Neb. 223. It has also been held
that receiving property in this state which has been stolen
in another state may be prosecuted in this state. *In re
Loomis,* 84 Neb. 493. Our statute also expressly provides
that these several counts may be united in one information.
Rev. St. 1913, sec. 9057. We think that this contention of
the defendant is without merit.

2. Before filing his motion for a new trial, the defend-
ant applied to the court for an order requiring the foreman
of the jury to appear and give testimony as to matters
that took place in the jury room. The court refused to
make such order, and this ruling is now alleged as prejudi-

cial error. With this application the defendant filed an affidavit of his attorney in regard to statements made by the juror immediately after the verdict was rendered. It is insisted that these statements show that the witness would testify to matters that occurred in the jury room that would make the jurors themselves competent witnesses, and that the juror had refused to make an affidavit in regard to the matter. The affidavit stated a number of considerations that it is claimed influenced the jury that were not entirely proper, but it does not show that the witness could testify to any statements of facts made by any juror. The nearest approach to this is the allegation that the juror stated that all of the jurors knew that the Egan boys had been receiving stolen property. It does not appear that any juror stated that he knew that it was a fact and so influenced the jurors. Matters of opinion and arguments of jurors in the jury room are considered as inhering in the verdict, and as not such matters of misconduct as can be proved by the jurors themselves.

3. The state produced evidence tending to prove that Michael Egan, Jr., contracted to sell this animal to Mr. Hanna for $70; that Mr. Hanna took the animal on trial and afterwards made payments thereon, and after he had it for several months it was taken from the possession of Mr. Hanna and was found upon the ranch and among the horses of this defendant; that a short time afterwards one Philpot, who was a dealer in horses, went to defendant's place and contracted with him to purchase the animal with another of defendant's horses, and that on the next day the defendant sent the two animals to town to complete the sale. The state contended that the title to the mare was transferred to Mr. Hanna by the transaction between him and Michael Egan, Jr., and that Mr. Hanna had made substantial payments thereon; that one of the defendant's sons took the mare from Mr. Hanna's possession without his knowledge or consent under circumstances which amounted to larceny, and secretly conveyed her to the defendant's ranch, and that the defendant received her, knowing all of the above facts.

The defendant kept a large number of horses on his range. He appears to have been engaged principally in farming and horse raising. He sometimes bought and frequently sold horses. His older sons also transacted business independently of their father. They owned a large tract of land and were also engaged in raising horses. They bought large numbers of them and prepared them for market. Some of these horses were occasionally and perhaps frequently transferred from one ranch to the other across the state line, and this mare in question, while she was nominally in the possession of Mr. Hanna, was at times among the horses upon the range of the defendant's sons. There was evidence that Michael Egan, Jr., had purchased this animal with 50 or more others some eight years before the transactions in question, and that he made the arrangements with Mr. Hanna, placing the animal in Mr. Hanna's possession. The defendant testified that he knew nothing about that arrangement and never knew that such arrangements had been made. There was no direct evidence that he did. If it is to be found that the defendant knew that Mr. Hanna had an interest in this animal, it must be found from the relation between the parties and their manner of doing business, and perhaps from other circumstances. It was contended by the state that John Egan, who was 17 or 18 years of age and was residing with his father, took this mare from the range on the other side of the state line to his father's place secretly and without the consent of Mr. Hanna. The defendant testified that this mare, with three or four others, was observed by him upon his range a few days before the sale to Mr. Philpot, and that he supposed that they had returned voluntarily, and had no knowledge that they had been brought there intentionally. There was no direct evidence contradicting this testimony, and if it is to be found that John Egan did wilfully and secretly bring this mare to his father's ranch, and that the defendant knew that, it must be found from the circumstances in the case. We refrain from expressing any opinion upon the sufficiency of this testimony, since there may be other and different testimony if this case is to be tried again.

4. The defendant established his character and reputation for honesty in the community where he lives about as well as such a matter can be established by human testimony. Charles A. Weston, who is well known in the state, and has been formerly auditor and regent of the university, testified that he had known this defendant for 27 years; that he was well acquainted with all of the defendant's neighbors and with those who resided in the same community with the defendant and who have known him for a long time; that he knew the defendant's general reputation for honesty in the community where the defendant lives, and that his reputation was good. The defendant's neighbors were also called, and, when 6 or 7 such witnesses had testified emphatically to his good reputation for honesty, the state inquired how many witnesses they proposed to offer on that question, and it was announced that the defendant had 12 or 14 witnesses there for that purpose. The court then announced that 7 were sufficient and the number was limited accordingly. The state made no attempt to contradict or explain this testimony. The defendant's reputation for honesty must be considered as established by this evidence.

5. The court directed the jury to find the defendants not guilty under the first count, and instructed them that a material allegation of the second count is: "That defendants, Michael Egan, Sr., and John Egan, then and there being, did then and there unlawfully and feloniously receive and take into their possession the mare described in the information;" that the mare was stolen with intent to defraud the owner; and "that defendants then and there knew that said mare had been stolen." Also, "If you are satisfied from the evidence, beyond a reasonable doubt, of the truth of each one and all of the foregoing material allegations of the second count of the information, then you should find the defendants guilty as charged therein." It is contended that this instruction is erroneous in that it does not tell the jury that the defendant must have received the property with intent to defraud the owner. The inten-

tion to defraud the owner of his property is of course the gist of the offense. In *Goldsberry v. State*, 66 Neb. 312, 329, the court in one of its instructions told the jury: "The buying and receiving, knowing them to have been stolen, is the material part; and if you believe from the evidence, beyond a reasonable doubt, that the defendants bought or received the mule, or horses, or any of them, from any person whatsoever, knowing them to have been stolen, then you should find the defendants guilty as charged." This was held to be reversible error because it did not include the element of intent to defraud the owner. This instruction in the case at bar has the same defect and was peculiarly dangerous in the condition of this evidence.

6. It was contended in behalf of the defendant that this mare was taken by Mr. Hanna upon trial, and that the ownership of the property had never been transferred to Mr. Hanna. Mr. Hanna testified that he took the mare upon trial, and that afterwards, having become satisfied, concluded to keep her, and that the price agreed upon, in case he concluded to keep her was $70, and that he had made payments in small amounts from $1 to $3 each from time to time; and Mrs. Hanna also testified to payments made by her husband on account of the purchase of the mare. After the plaintiff had rested, Michael Egan, Jr., testified that the price was agreed upon between them, and that Mr. Hanna took the mare upon trial, and had never closed the agreement, and had never made any payments except certain small items of charges that Mr. Hanna had against him for shaving him from time to time. Of course the question as to payments made by Mr. Hanna was a very material question, and, after the defendant had rested, the state offered further evidence in regard to such payments. This was objected to as not proper rebuttal testimony. But the objection was overruled, and Mr. Hanna was called as a witness and produced a memorandum book in which he testified that he made entries of the payments on account of the purchase. After he testified, a leaf of the memorandum book containing the entries was offered in evidence, and was objected to on the ground that it was

incompetent. The objection was overruled and the statement was received in evidence containing entries of payments to Mr. Egan in small amounts. There was no evidence that this book was a book of original entries of general accounts, or otherwise competent as evidence under the statute. Evidence of the sale of the mare to Mr. Hanna and of payments made by him thereon was of course material upon the question of ownership of the property and should have been offered in chief by the state. In any view of the case, this memorandum was not competent evidence, and was, under the condition of the evidence, highly prejudicial to the defendant.

The nature of this charge and the character of the evidence required that the defendant's rights should be carefully protected. The prosecution was vigorous; the prosecuting attorney was not always as careful of the rights of defendant as the interests of the state demand. We cannot find from this record that the defendant has not been prejudiced by the rulings of the court and the instruction complained of. The judgment of the district court is reversed and the cause remanded.

REVERSED.

MORRISSEY, C. J., not sitting.

HAMER, J., concurs in conclusion.