PEARL SCHINDLER, APPELLEE, v. FRANK MULHAIR, APPELLANT.

273 N. W. 217

FILED MAY 14, 1937. No. 29840.

*J. J. Harrington* and *John T. Murray,* for appellant.

*Barnhart, Greenamyre & Nelson* and *W. L. Brennan,* contra.

Heard before DAY, PAINE and CARTER, JJ., and TEWELL, CHAPPELL and YEAGER, District Judges.

YEAGER, District Judge.

This is an action instituted by the plaintiff and appellee against the defendant and appellant to recover damages claimed to have been sustained by her on the 11th day of May, 1935, in Boyd county, Nebraska, resulting from a collision between an automobile in which she was riding, and which was being operated by her husband, and a horse which was on the public highway and which horse belonged to the defendant.

The petition sets forth substantially that on May 11, 1935, at about 11:30 p. m., Marvin Schindler, the husband of plaintiff, was driving and operating a Model A Ford coupé on a public highway, known as highway No. 12, from Lynch, Nebraska, toward his home which was east of Monowi, Nebraska; that plaintiff was riding in said automobile; that when they reached a point about three miles east of Lynch and at a point where the said highway ran along the south side of the right of way of the Chicago & Northwestern Railway Company, which right of way separated the highway from the farm of the defendant,

the automobile driven by the husband of plaintiff hit and struck a horse which the defendant negligently and wrongfully permitted to be loose, unhitched, untied, and unguarded on the said highway.

Plaintiff alleged that as a result of the collision she was thrown against the dashboard and windshield and onto the floor of the said automobile and was severely injured and bruised, and that as a result thereof, being pregnant, thereafter on the 24th day of May, 1935, had a miscarriage.

The defendant filed an answer, denying generally the allegations of plaintiff's petition. The general denial was followed by a denial that the horse in question belonged to the defendant or that it was in his possession or under his control or custody. Defendant further answered that the injuries received by plaintiff resulted from the negligence of the husband of plaintiff and the contributory negligence of plaintiff and her husband.

The plaintiff by reply denied all allegations and averments of new matter contained in the answer of the defendant.

On the issues thus joined a trial was had to a jury which resulted in a verdict and judgment in favor of plaintiff and against the defendant for the sum of $5,000. From this judgment the defendant brings this appeal.

In his brief appellant has enumerated twelve separate assignments of error on which he relies for a reversal. A decision of this case does not require a discussion of all assignments. The second assignment of error challenges the sufficiency of the evidence to sustain the verdict. No question is raised in the brief with reference to liability on the part of the person who had control and supervision of the horse which was in collision with the automobile in which plaintiff was riding. So far as the record is concerned, we are required to consider it as established that negligence was present in permitting the horse to be upon the highway at the time and place and under the circumstance shown.

The only question in this connection requiring considera-

tion is the one as to whether or not the evidence sufficiently shows that the defendant was the custodian of and had control of the horse. The evidence shows that the horse did not belong to defendant and in her brief plaintiff substantially concedes this to be true. On the question of custody and control, the husband of plaintiff has related a purported conversation with the defendant in answer to a question propounded on the trial as follows: "Q. Will you tell the jury what your conversation with him was at the time? A. I drove off the highway and up to where he was standing; I got out of my car and I says, 'Say, was that your horse I run into?' He says, 'Yes; was that you that run into that horse?' He says, 'I was wondering who run into the horse, I thought it was some truck driver from Spencer,' I believe Kelley Martin was his name; he says, 'I was just offered $125 for that mare and she was to have a colt,' and he says, 'I thought she would probably have it that night;' he says 'I turned her out and went up about 9:30 to see if she was all right; she didn't have the colt yet and I came back.'" In addition to this claimed admission that the defendant turned the mare out and knew she was on the highway, Frank Heizer and Edward Heizer, brothers of the plaintiff, testified that at about 7 p. m. they saw the defendant leading two horses toward the railroad right of way, one of which answered the description of the one which was struck by the automobile in which the plaintiff was riding. F. T. Schrunk, another witness, testified that between 7 and 8 o'clock he noticed a horse of the same description along the road in front of defendant's farm.

As against this, defendant denied that he ever had told the husband of plaintiff that he was the owner of the mare in question or at any time had any control over her, although he admits a conversation about the mare in which his version is as follows: "A. Well, he was going to town and he passed me, and he went on to town, or some place west, and when he came back he stopped there and he asked me whose horse was that; he says, 'Was that your horse

or Pete's horse?' And I says, 'Did you kill him?' And he says, 'Yes, I killed him.' And I says, 'Well, it sure ain't my horse.' And he says, 'It is your horse, and I have plenty of witnesses to prove it is your horse.' So we quarreled and jangled a little while, and he insinuated that I ought to pay for fixing up his car; he says, 'It will only cost $30.' And I says to him, 'What for, I ain't got no interest in that car; how do you figure out that I have to fix up your car?' And he says, 'I can prove it is your horse; it was beside your field and you are responsible.' I told him he would have to bring me different authority than that. I think that was about all that was said there. Q. Did you say anything to him about making him pay for the horse, if it had been your horse? A. Yes; I told him, I says, 'If you killed that horse and I owned it, I would sue you for $150 for wilfully and maliciously killing that animal on a nice road like that; he is a crazy driver anyway.'" A number of witnesses testified the mare belonged to Peter Mulhair, brother of the defendant. Still others testify that shortly before this occurrence this mare and another one were brought back from near Creighton, Nebraska, unloaded at the farm of defendant and, at the request of Peter Mulhair, placed in his pasture and were completely in his control and possession.

The evidence was in very sharp conflict on this essential point in the case. On this conflicting evidence the jury found in favor of the plaintiff. The evidence is clearly sufficient to sustain the finding of the jury. A verdict of a jury in a law action based upon conflicting evidence will not be disturbed unless clearly wrong. It appearing that the evidence is sufficient to sustain the verdict, this court will not disturb the judgment entered thereon. *Boehler v. Kraay*, 130 Neb. 233, 264 N. W. 745; *Potach v. Hrauda, ante*, p. 288, 271 N. W. 795.

We come now to and will discuss together appellant's eighth, ninth and twelfth assignments of error since they deal with alleged misconduct of the jury and the rulings of the court in relation thereto. By affidavits of them-

selves filed in support of a motion for new trial, the attorneys set forth in substance that, after verdict in this case, they talked with certain of the jurors, and that said jurors in their deliberations considered as damages the loss of plaintiff's child through miscarriage; that she might have other miscarriages in the future; that many jurors advanced as argument in favor of a large verdict that they would not have their own wives miscarry for $10,000; and that another reason for the rendition of such a large verdict was that too many people were turning their stock out on the highway and they wanted to set an example. In the affidavits the attorneys for defendant named the particular jurors to whom they talked, and thereafter the plaintiff filed the affidavits of each of the jurors so named in which they, and each of them, specifically denied that they had made any such statements to attorneys for defendants. On the day of the hearing on the motion for new trial, defendant subpœnaed the said jurors and asked leave of court to have them testify in support of the motion for new trial. The trial court refused to permit them to become witnesses.

A statement of the trial judge in connection with the refusal to permit the jurors to testify is in the bill of exceptions and it is apparent that his reason for refusal was grounded on the proposition that the matters set forth in the affidavits inhered in the verdict and could not be proved by the jurors themselves. In an unbroken line of decisions this rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach or explain a verdict or on what grounds it was rendered, or to show a mistake in it, or that the jurors misunderstood the charge of the court, or that they mistook the law, or the result of the finding, has obtained on the ground that such matters inhere in the verdict.

Do the matters referred to in the affidavits of the attorneys for defendant inhere in the verdict? If they do, then the trial court was correct in the refusal to permit the calling of the jurors as witnesses. There are numerous de-

cisions of this court wherein it was held under particular sets of facts that the jurors could not be heard to impeach the verdict. In *Iman v. Inkster,* 90 Neb. 704, 134 N. W. 265, which was a case wherein it was urged by affidavit of juror that the jury disregarded evidence and disobeyed instructions, the court said: "The attack so made related to matters inhering in the verdict itself, and the jurors could not impeach it in that manner."

In *Welsh v. State,* 60 Neb. 101, 82 N. W. 368, which was a rape case, the court said: "By affidavits of some of the jurors it appears that while considering their verdict certain of them suggested that the accused should be convicted because Michael Begley had been found guilty, it having been shown that Begley and the defendant both ravished the prosecutrix. The testimony of the jurors in the matter just indicated, is incompetent to impeach their verdict."

In *Hamblin v. State,* 81 Neb. 148, 115 N. W. 850, on the question of what may not be impeached by the affidavits of jurors, the court quoted with approval the following from 2 Thompson, Trials, sec. 2618: "Upon the grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it; * * * or that they otherwise mistook the law, or the result of their finding."

The case of *Egan v. State,* 97 Neb. 731, 151 N. W. 237, is one where it was sought to compel the foreman of the jury to testify to matters occurring in the jury room. An affidavit of attorney was filed in that case wherein it was set forth in substance that jurors had stated in the jury room that it had been known that the Egan boys had been receiving stolen property and that such statements of jurors were a consideration leading to the verdict of guilty. The court in commenting on the subject said: "The affidavit stated a number of considerations that it is claimed influenced the jury that were not entirely proper, but it does not show that the witness could testify to any state-

ments of facts made by any juror. The nearest approach to this is the allegation that the juror stated that all of the jurors knew that the Egan boys had been receiving stolen property. It does not appear that any juror stated that he knew that it was a fact and so influenced the jurors. Matters of opinion and arguments of jurors in the jury room are considered as inhering in the verdict, and as not such matters of misconduct as can be proved by the jurors themselves."

These cases and numerous others contain illustrations of the rule as to what does inhere in the verdict. In the light of these illustrations, we conclude that the matters complained of by appellant are matters which essentially inhered in the verdict of the jury, and therefore the affidavits or testimony of the jurors were not admissible to impeach the verdict.

The remaining question relates to the amount and size of the verdict. The appellant contends that in the light of the evidence $5,000 is excessive. The evidence substantially shows, as to the injuries received by appellee, that as a result of the accident she became dazed as a result of striking her head, suffered bruises and contusions on her lower limbs, she had severe pains in her chest and abdomen, that she was ill for about ten days when she had a miscarriage, that since that time she has had fainting spells, that she has been nervous and has been unable to sleep well, that after the accident she suffered considerable pain. Her physician testified that she was in a semianemic state and would so continue for some time. He did not estimate the time it would take to recover. There is nothing in the evidence to indicate that appellee sustained any permanent injury.

It is recognized that this is a case wherein mental anguish, personal injuries and physical suffering were properly submitted and considered in determining compensatory damages, and that no method of exact computation can be devised, and that the amount of the recovery must generally be left to the sound discretion of the jury. *Flinn*

*v. Fredrickson*, 89 Neb. 563, 131 N. W. 934. With a recognition of the rule, in the light of the injuries sustained as disclosed by the record, it is our opinion that the judgment is excessive and should be reduced. We, however, do not believe it is so excessive as to indicate that the jury were moved by passion and prejudice.

It is therefore ordered that the appellee shall file a remittitur in this court in the sum and amount of $2,000 within 20 days, and on the filing of such remittitur within the time fixed the judgment will be affirmed for $3,000 with costs. If she fails to file remittitur, then the case will be reversed and remanded for a new trial.

AFFIRMED ON CONDITION.